8090

CITY OF GEORGETOWN v. SCURRY.

1. Cities and Towns—Recorder—Disorderly Conduct.—It is too favorable to a defendant for a recorder to instruct the jury that calling an officer a liar on the street in an abusive manner and loud enough to be heard by persons passing along the streets would not warrant the officer in arresting unless the language and manner of the speaker was calculated to bring on a fight.

2. Ibid.—Disorderly Conduct—Warrant.—A police officer who goes outside the course of his duty and speaks so abusively of a citizen in his presence as to elicit language in reply, which is no more disorderly, either in substance or manner, than that of the officer, is not justified in arresting the citizen without a warrant for disorderly conduct.

Before Memminger, J., Georgetown, June, 1911. Reversed.

Indictment by City of Georgetown against C. LeRoy Scurry.  Defendant appeals from Circuit order affirming judgment of recorder's court.

*Mr. Walter Hazard,* for appellant, cites: *When police officer can arrest without warrant at common law:* Clark Crim. L., sec. 40; 2 N. & McC. 475; 64 S. C. 328. *Powers of a police officer:* 1 Dill. Mun. Corp., sec. 149; 17 S. C. 58; 9 S. C. 309; 2 Strob. 73; 40 S. C. 507; 61 S. C. 242; 70 S. C. 74; 53 S. C. 150.

*Solicitor W. H. Wells* and *Mr. James W. Wingate,* contra.

January 24, 1912.  The opinion of the Court was delivered by

Mr. Justice Woods.  The appellant, C. LeRoy Scurry, was convicted by a jury in the court of the recorder in the city of Georgetown under the charge of violating the following ordinance: "That any and every person guilty of disorderly or drunken conduct ŏr all parties assisting to produce any riot, or in any way maliciously or mischievously disturbing the peace and good order of the town, or using any profane or obscene language, to the annoyance of any citizen, shall, upon conviction thereof, be fined in any sum not exceeding twelve ($12.00) dollars for each offense, nor less than five ($5.00) dollars, or to be confined in the county jail for not exceeding ten days."  The specification of the offense is thus set out in the warrant: "* * * that at Georgetown in said State, on the 23d day of May, A. D. 1911, LeRoy Scurry, in the city of Georgetown, S. C., did disorderly and unlawfully conduct himself, in that he, the said Scurry, did resist a lawful arrest by striking and fighting an officer of the said city, duly authorized to make arrest, and refused to submit to the said arrest, then and there being lawfully made * * *."

The Circuit Court affirmed the judgment of the recorder's court.  The case turned mainly on the issue whether the defendant was guilty of such disorderly conduct on the street as to justify the chief of police in arresting him without a warrant.  L. L. Bolick, chief of police, thus testified against the defendant: "On last Tuesday in the forenoon Mr. Scurry, the sheriff, and I were talking.  We first started talking on the sidewalk and afterwards I got in my buggy.  Mr. LeRoy Scurry came up while we were talking and said these words: 'I told you in the recorder's court that you were a liar and I still say you are a liar.'  Then I

appealed to his father and told him I would not stand for that; if he called me a liar again I would arrest him. Afterwards LeRoy said: 'Chief, I told you that you and Spry both lied and I mean it.' I then started towards him and he began to strike me several times about the body and arm. If he ever struck me in the face I didn't feel it. I had him about the neck with my left arm, and his father, Mr. Scurry, got hold of my right hand; then Mr. Tom Skinner came up and said: 'Mr. Bolick, I will hold LeRoy, turn him loose,' and I then got loose from the sheriff and told him not to put his hands on me any more, and I turned around as if I was going towards LeRoy, and Mr. Scurry said, 'Don't arrest him; I will put up a bond for him,' and I charged him with $10.00 bond and I told him I also wanted $10.00 fine."

The defendant did not testify, but the account given on his behalf by C. W. Scurry, his father, was as follows: "On last Tuesday morning, somewhere about noon, Mr. Tommy Skinner and I called into Mr. Smith's office to sign a bond. When I came out of the office I saw the chief, and I walked up to shake hands with him, and asked him had any excitement taken place during my visit, and he said, 'Everything is quiet, reasonably so.' 'You haven't had any trouble at all?' 'Only LeRoy tried to take charge of the town since you were gone. His mother told me that Mrs. Doar had the cow locked up; that was all I heard.' He then told me what was done, and said LeRoy went on ridiculous, and also had lied. I said: 'Well, LeRoy is a boy and is hot-headed, I know, but I didn't know he was a liar.' Mr. Bolick said: 'He lied and we made him admit it on cross-examination at the recorder's court.' About that time LeRoy walked up and said: 'Chief, I told you that you were a liar and why do you continue lying?' Mr. Bolick said: 'I am not going to stand for it;' and I said: 'Chief, there is no use of this;' and finally he got out of his buggy. I don't remember what he said. LeRoy said: 'I told you that you and Spry lied

and I mean it.'. Chief got out of his buggy and they commenced fighting. He said: 'I am going to lock this young man up, I have been watching him quite a while;' and I said: 'I will furnish bond for him;' and chief still said: 'I am going to lock him up:' Tom Skinner came up about that time and grabbed hold of LeRoy and pulled them apart. I said: 'If you want a bond, just say so; but you cannot lock him up today.' And then Mr. Bolick stated that he wanted $10.00 for bond. I went in my office and got the $10.00 and gave it to him. He then said: 'I want $10.00 fine;' and I went in and got it from someone and gave it to him." .

The scene of the disorder was immediately in front of the courthouse, and John Harrison, a witness for the defendant, testified that he heard the abusive language of the defendant in the aisle of the courthouse where he was engaged in conversation. In view of this testimony it seems to us clear that the appeal cannot be sustained on the ground that there was no evidence to sustain the conviction for the offense charged.

In his charge to the jury the recorder made the question of Scurry's violation of the ordinance depend entirely on whether his language in the street was disorderly conduct or the using of profane language to the annoyance of any citizen. It was in effect an instruction that the defendant could not be convicted of resisting an officer if his language was not such as to warrant the officer in making the arrest. It is true that profane language is language irreverent toward God or holy things, and the recorder erred in charging the jury that calling a man a liar in an insulting manner would be using profane language. But we think the error was cured, when concluding his charge, the recorder thus submitted but one issue to the jury: "The one question for you all to decide is the manner in which Mr. Scurry addressed Mr. Bolick when he called him a liar. If it is plain to your minds, jurors, that Mr. Scurry approached Mr. Bolick in an insulting manner while he was addressing

his father, which would cause Mr. Bolick or any citizen not in uniform to resent it by a fight, Mr. Scurry is guilty and should be punished. If, on the other hand, Mr. Scurry felt that Mr. Bolick was saying something detrimental to his character and called him a liar in a cool and reserved way, Mr. Scurry is not guilty and should not be punished."

The evidence of defendant's own witness tended to show that the language used by him was very abusive, and loud enough to be heard by persons passing along the street. It was too favorable to the defendant to charge that such language would not justify arrest unless it was calculated to bring on a fight.

There is one point, however, on which we think the recorder committed a fatal error. There was evidence on the part of the defendant from which the jury might have drawn the inference that the abusive language of the chief of police, uttered entirely outside the course of his duty, provoked the defendant to use language no more disorderly or abusive than that used by the officer. A police officer who goes out of the course of his duty and speaks so abusively of a citizen in his presence as to elicit language in reply which is no more disorderly either in substance or in manner than the language of the officer provoking it, is not justified in arresting without warrant the citizen for disorderly conduct in using the abusive language. The recorder should have given an instruction to this effect as requested by defendant's counsel.

The judgment of this Court is that the judgment of the Circuit Court be reversed.

*Only* MESSRS. CHIEF JUSTICE GARY *and* JUSTICE HYDRICK *participate in this opinion and concur.*