19142

The STATE, Respondent, v. Larry HANAPOLE and Terry Cobb, Appellants.

(178 S. E. (2d) 247)

C. Rauch Wise, Esq., of Greenwood, *for Appellant,*

*Messrs. Daniel R. McLeod, Atty Gen.,* and *Hubbard W. McDonald, Jr., Asst. Atty. Gen.,* of Columbia, and *Phillip K. Wingard, Esq., Solicitor* of Lexington, *for Respondent,*

December 17, 1970.

Moss, Chief Justice:

The President of the United States, The Honorable Richard Milhous Nixon, was scheduled to arrive at the Columbia Metropolitan Airport during the morning of May 3, 1969. In view of this event tight security measures were obviously necessary. The Airport Commission was charged with the duty and responsibility of preparing the facilities of the airport for the arrival of the President and his party. In furtherance of this objective, the Commission established liaison with the Federal Secret Service and also enlisted the aid of several South Carolina Law Enforcement Agencies, and they jointly developed plans for the protection of the President and his party and to insure public order at the airport. Plans were also made to provide for the spectators who were expected to be on hand to welcome the President. It was decided to set up a roped off area for spectators adjacent to the landing ramp, thereby physically separating such spectators from the President and his party. Security officers were placed at the entryways to the spectators area with instructions that any individual carrying objects that could be used as a weapon, or carrying an obscene sign, would be denied admittance to the area unless they left such objects and signs outside. Likewise, all bulky items in which a weapon could be concealed would have to be searched before such could be taken into the spectators area.

The record reveals that shortly before the arrival of the President's plane, approximately 5,000 people had assembled in the roped off area and were orderly and well behaved as they awaited the coming of the President.

The appellants, along with several others, came to the airport about twenty-five minutes before the scheduled arrival of the plane bearing the President and his party. This group came to the airport to voice their opposition to the involvement of the United States in the war in Vietnam and

carried certain signs and banners expressing these views, some of which were attached to sticks or staffs. This group was conspicuous by reason of their dress and the carrying of the signs and banners. There is evidence that those who had already assembled in the spectators area became restless and uneasy at the sight of this group. When this group of individuals reached the roped off area, they asked for Sheriff Day, one of the law officers in charge of the security force. Sheriff Day came forward and introduced himself to the group and informed them that if they desired to enter the spectators area they would have to leave their sticks and obscene signs outside and that the rolled up banners carried by some of the group would have to be inspected. He also informed them that if they would comply with this request they would be admitted to the spectators area. Some of the group failed to comply with the directive of the sheriff and were told that they would have to leave the premises. Upon their refusal, seven of the group, including the appellants, were placed under arrest and later charged with disorderly conduct and trespass.

The warrants charged the appellants, and five others, on May 3, 1969, with (1) "The crime of disorderly conduct in that on said date, at the Columbia Metropolitan Airport, West Columbia, South Carolina, the above named persons did use vulgar and abusive language and did act in a generally disorderly manner, all in a boisterous manner", in violation of Section 16-558 of the Code; and (2) Did enter into the place of business and premises of the Richland-Lexington Airport Commission and without good cause or excuse did fail and refuse to leave immediately after being requested and ordered to leave by Carroll W. Day, Sheriff of Lexington County", in violation of Section 16-388 of the Code.

All of the defendants named in the warrants, with the exception of the appellants, entered guilty pleas in the Magistrate's Court to the disorderly conduct and trespass charges, and were fined $100.00. The appellants, represented

by retained counsel, entered pleas of not guilty to both charges and were tried before a jury in the Magistrate's Court in the City of West Columbia and were found guilty as charged and were sentenced to sixty days imprisonment on the Lexington County chain gang. The appellants appealed from said conviction and sentence to the Court of General Sessions for Lexington County, asserting that the conviction in said Magistrate's Court should be reversed or at least a new trial should be granted, such being predicated upon exceptions charging error in the Magistrate's Court. The Honorable Louis Rosen, presiding judge, by order dated March 24, 1969, affirmed the conviction of the appellants and it is from this order that the appellants prosecute this appeal.

The appellants by appropriate motions in the lower court and by exceptions here, contend that the evidence was insufficient to sustain their conviction and, therefore, there was error in refusing their motions for a directed verdict. In determining whether the trial judge should have granted a verdict of acquittal or submitted the case to the jury, test is whether there is any substantial evidence which reasonably tends to prove the guilt of the accused or from which their guilt may be fairly and logically deduced. *State v. Hyder,* 242 S. C. 372, 131 S. E. (2d) 96, and *State v. Brazzell,* 248 S. C. 118, 149 S. E. (2d) 339.

Sheriff Day testified that he first saw the appellants when they, along with several others, were about seventy-five yards from his station and approaching this point at a brisk pace. He said that some of the group were carrying signs and banners as they approached. Sheriff Day further testified that when this group of individuals reached his position that someone asked for Sheriff Day and that he stepped forward and introduced himself and informed them "that they could not bring these objects in unless they were checked, and they had to dispose of the sticks. They made no effort to let us check these objects." This witness addi-

tionally testified that some individuals in this group were carrying red banners and one had what appeared to be a large piece of red cloth rolled up, in which it would have been possible to have concealed a weapon. The sheriff stated that it appeared to him that this group had no intention of laying aside their signs and sticks and they crowded his position. He further testified that there was some rather loud and boistrous talk and he heard obscenities but he was unable to identify any one individual using obscenities. It appears from the sheriff's testimony that when he concluded that the group was intent on retaining their various signs, he ordered them off the airport property. When the members of the group did not comply with the sheriff's order to leave, seven were arrested. The sheriff refers to appellant Cobb as having had a camera and taking pictures at the time of his arrest. He said that appellant Hanapole carried a sign with the American flag painted thereon and in the white stripes of the flag, the word "kill" was written several times.

We quote the following testimony offered by Sheriff Day during his cross examination:

"Q. Sheriff, did you hear either Terry Cobb or Larry Hanapole make any loud or boisterous noise, or use any vulgar and abusive language, either one of them?

"A. Not as individuals, Mr. Dean.

"Q. I know you didn't hear them as a group, did you, because they can't speak that way, but did you hear them use any abusive, profane, vulgar or obscene language that they are charged with here?

"A. No. sir."

\* \* \*

"Q. Can you remember one person that had a stick in his hand? One?

"A. I couldn't identify any one individual as having a stick."

\* \* \*

"Q. Did either of these young people have a combat helmet, football helmet or pith helmet?

"A. No, sir.

"Q. Do you remember if they had a stick or not?

"A. No, sir, I don't remember whether they had a stick or not."

A. B. Lex Price, a member of the Richland County Sheriff's Department, who testified on behalf of the State, said that he was present at the Columbia Metropolitan Airport on the day in question and was serving as a member of the security force. This witness stated that he saw this group with their signs and banners but he did not see the appellants.

William A. Johnson, another police officer, serving at the airport on May 3, 1969, testified that he arrested appellant Cobb. He said Cobb did not have a banner or a sign and all he remembers about Cobb is the fact that he had a camera and was taking pictures at the time of his arrest.

James R. Metz of the Lexington County Sheriff's office, was called by the State and related that he saw the appellants, along with the other members of the group, and recalls the presence of appellant Cobb because he had a camera. He further testified that he heard vulgarity but he could not identify any particular individual using such language.

■ The appellants were charged with the violation of Section 16-558 of the 1962 Code, as amended, which provides that:

"Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, (b) use obscene or profane language on any highway or at any public place or gathering * * * shall be deemed guilty of a misdemeanor * * *."

In viewing the testimony as presented by the State, in a light most favorable to it, it is our conclusion that the

evidence fails to show a violation by the appellants of the aforesaid statute. We have carefully examined the testimony and fail to find any evidence that the appellants used vulgar or obscene language or conducted themselves in a disorderly or boisterous manner. This being true, it was the duty of the trial magistrate to direct a verdict of acquittal in favor of the appellants and it was error to refuse such motion.

The appellants were also charged with the violation of Section 16-388 of the 1962 Code, which provides that:

"Any person who, without legal cause or good excuse, enters into the dwelling house, place of business or on the premises of another person after having been warned within six months preceding not to do so or any person who, having entered into the dwelling house, place of business or on the premises of another person without having been warned within six months not to do so, fails and refuses, without good cause or good excuse, to leave immediately upon being ordered or requested to do so by the person in possession or his agent or representative shall, on conviction, be fined not more than one hundred dollars or be imprisoned for not more than thirty days."

It is provided in Section 2-390.13 of the 1962 Code, as amended, that:

"The territory embraced by the counties of Richland and Lexington is hereby constituted an airport district and a political subdivision of this State, the functions of which shall be public and governmental, and the inhabitants of the territory are hereby constituted a body politic and corporate. The corporate name of the airport district shall be Richland-Lexington Airport District, and by that name the airport district may sue and be sued."

It is apparent, under Section 2-390.13 of the Code, that the airport premises are owned by the Richland-Lexington Airport District, a political subdivision of South Carolina, and is, therefore, public property, 73 C. J. S. Property § 6, page 156.

It is the position of the appellants that their conviction for trespass, under Section 16-388 of the Code, was improper as this statute applies only to private property and has no application to public property. We agree with this contention. In the case of *City of Greenville v. Peterson,* 239 S. C. 298, 122 S. E. (2d) 826, this court stated that Section 16-388 was "clearly for the purpose of protecting the rights of the owners or those in control of private property" and the owner of such property "may lawfully forbid any and all persons, * * * to enter or remain upon any part of his premises which are not devoted to public use." It follows that since Section 16-388 applies only to private property, a conviction thereunder for an alleged trespass upon public property is not warranted and cannot be sustained. The trial magistrate was in error in not directing a verdict of acquittal in favor of the appellants for the reason stated.

In view of the conclusion that we have reached hereinabove it becomes unnecessary to consider the other questions raised by the appellants.

The judgment of the lower court is reversed and this case remanded thereto for the entry of a verdict of acquittal in favor of the appellants.

Reversed and remanded.

LEWIS, BUSSEY, BRAILSFORD, and LITTLEJOHN, JJ., concur.