806 P.2d 1063

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**JAMES M., a child, Defendant–Appellant.**

No. 12011.

Court of Appeals of New Mexico.

Dec. 13, 1990.

Certiorari Denied Feb. 13, 1991.

Hal Stratton, Atty. Gen. and Bill Primm, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Jacquelyn Robins, Chief Public Defender and Amme M. Hogan, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

## OPINION

CHAVEZ, Judge.

Defendant appeals from the children's court judgment and disposition finding him guilty of disorderly conduct. We grant defendant's request to amend his docketing statement. The issues discussed on appeal are (1) whether there was sufficient evidence to support the conviction of disorderly conduct, and (2) whether the applicable disorderly conduct statute is unconstitutionally vague and overbroad. We affirm.

## FACTS

The events from which the charge of disorderly conduct arose took place on July 7, 1989. We view the elicited evidence in the light most favorable to sustain the children's court finding that defendant committed disorderly conduct. *See State v. Lankford*, 92 N.M. 1, 582 P.2d 378 (1978); *State v. Bloom*, 90 N.M. 192, 561 P.2d 465 (1977).

Defendant was riding his bicycle when he was stopped by Lujan. Lujan accused defendant of having broken into Lujan's van. Defendant denied the accusation. Defendant tried to leave. Lujan pulled the seat of defendant's bicycle to prevent defendant's departure. Defendant protested this detention. Lujan continued to accuse defendant of breaking into his van. At this point, Officer Bencomo arrived.

When Officer Bencomo arrived, defendant and Lujan were arguing. Lujan told Officer Bencomo that he suspected defendant of having burglarized Lujan's van. Defendant continued to deny the accusation. Officer Bencomo requested that Lujan and defendant move up the street to the corner of Bullard and Market Street by Colby's store. Both parties complied with Officer Bencomo's request. Officer Bencomo followed and parked his car.

As Officer Bencomo exited his car, he heard defendant and Lujan arguing. Defendant yelled "[f]uck you" to Lujan. Officer Bencomo asked Lujan and Bencomo to stop arguing. They continued. Officer Bencomo again requested that the parties stop arguing. Defendant yelled to Lujan "[f]uck you, you don't know who I am." Officer Bencomo testified that Lujan "was keeping it moderate," but that defendant was clearly upset. Defendant and Lujan had been arguing in front of Colby's for about 30 seconds in Officer Bencomo's presence. Officer Bencomo was concerned because defendant was yelling, flailing his arms, pointing, and continuing to get excited. At this point, Officer Bencomo thought that a fight might erupt. To prevent what he perceived to be a possible fight, Officer Bencomo stepped between defendant and Lujan.

After Officer Bencomo stepped between the parties, defendant was still visibly upset. Defendant looked around Officer Bencomo, pointed at Lujan, and again yelled "[f]uck you. You don't know me." At this time, Officer Bencomo placed defendant under arrest for disorderly conduct.

Throughout the incident, a lot of people were going in and out of Colby's and the nearby stores. Four or five people had gathered to watch the incident. A witness from half a block away later testified that he could not hear any yelling.

Defendant was adjudicated guilty of disorderly conduct, as defined by NMSA 1978, Section 30–20–1 (Repl.Pamp.1984). We hold that defendant's conviction is supported by sufficient evidence and that the statute is not unconstitutionally overbroad.

1. Sufficiency of the Evidence

Defendant contends that there was insufficient evidence to support his conviction for disorderly conduct. Section 30–20–1(A) states that disorderly conduct consists of "engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace."

■ It is first necessary to set forth what evidence we may consider upon review. Defendant contends that the children's court relied only on defendant's indecent and profane language to support its finding of disorderly conduct. Accordingly, defendant states that this court should consider only defendant's speech, as opposed to his speech and conduct. We disagree. In its oral ruling, the children's court stated that defendant committed disorderly conduct by the use of indecent and profane language that tended to disturb the peace. No mention was made of defendant's flailing his arms, pointing, or becoming excited. In the context of this case, the oral remarks by the district court do not create substantial doubt that the court applied the proper legal standard in determining guilt. The children's court had heard all the evidence surrounding defendant's arrest for disorderly conduct. Thus, in finding defendant guilty of disorderly conduct, we assume that the children's court relied on both defendant's speech and conduct.

■ Defendant's profane and indecent speech, under the circumstances, supported his conviction for a violation of Section 30–20–1. We must first satisfy ourselves that a conviction under the statute does not offend the first and fourteenth amendments' right of free speech. The right to free speech is not absolute. As stated in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942):

There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words— those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

*Id.* at 571–72, 62 S.Ct. at 769. Thus, expressions which may be classified as "fighting words" are not constitutionally protected speech. In the present case, defendant's speech can be analyzed under the "fighting words" doctrine. If defendant's words constitute "fighting words," they

are not protected by the guarantee of free speech against a charge of disorderly conduct. *See Chaplinsky v. New Hampshire; State v. Wade,* 100 N.M. 152, 667 P.2d 459 (Ct.App.1983); *City of Alamogordo v. Ohlrich,* 95 N.M. 725, 625 P.2d 1242 (Ct.App. 1981).

■ "Fighting words" are those words "which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky,* 315 U.S. at 572, 62 S.Ct. at 769. "Fighting words" have also been defined as "... those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction." *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 1785, 29 L.Ed.2d 284 (1971). Thus, the words constitute fighting words as long as the language would cause an average person to react violently. *See State v. Authelet,* 120 R.I. 42, 385 A.2d 642 (1978) (as long as the language is inherently likely to cause the average person to retaliate violently, it is not necessary that the person who is personally insulted react violently). Defendant contends that a fight must actually occur before the fighting words doctrine is applicable. This contention is incorrect. It is necessary only that the words are "**likely** to provoke violent reaction." *Cohen,* 403 U.S. at 20, 91 S.Ct. at 1785 (emphasis added).

In the present case, defendant yelled to Lujan "[f]uck you" and "[f]uck you, you don't know who I am." These statements, directed toward Lujan, were made during the course of an argument between the two parties. Lujan was angry because he believed defendant had burglarized Lujan's van. Defendant was angry because of Lujan's accusation. Such statements were made on a sidewalk near several stores. Officer Bencomo noticed the parties arguing and stopped to intervene. The parties had been arguing for approximately 30 seconds in Officer Bencomo's presence. Defendant was standing close to Lujan when the statements were made. Officer Bencomo stepped between the parties because he thought a fight might begin. Defendant was flailing his arms and continued to yell

and point at Lujan. We find that it was reasonable for Officer Bencomo to conclude that a fight was likely to ensue. Lujan was being insulted loudly and profanely on a public sidewalk. People were walking by and four or five people had gathered to watch. Both parties were upset. It would be unreasonable to impose a requirement that Officer Bencomo wait until Lujan actually violently reacted to defendant's speech. Accordingly, we hold that defendant's speech amounts to "fighting words" and is, therefore, not afforded constitutional protection.

■ Having determined that there is no constitutional impediment to defendant's conviction, we examine whether defendant's speech and conduct amount to disorderly conduct under New Mexico law. To violate Section 30–20–1, defendant's conduct must have (1) been indecent or profane and (2) tended to disturb the peace. *See State v. Oden,* 82 N.M. 563, 484 P.2d 1273 (Ct.App.1971). Conduct which tends to disturb the peace is that conduct "which is inconsistent with the peaceable and orderly conduct of society." *Id.* at 565, 484 P.2d at 1275. The court in *State v. Florstedt,* 77 N.M. 47, 419 P.2d 248 (1966), equated "disturb the peace" with "breach of the peace." In *Florstedt,* the court adopted the New York court's definition of "breach of the peace": "'* * * It is a disturbance of public order by an act of violence, or by any act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community. * * *'" *Id.* at 49, 419 P.2d at 249 (quoting *People v. Most,* 171 N.Y. 423, 429, 64 N.E. 175, 177 (1902)).

■ Defendant contends that the state must show not only that his behavior was provocative, but that it actually provoked. We disagree. Section 30–20–1 does not require that defendant's speech and conduct actually caused a violent reaction in Lujan. Rather, the standard is whether defendant's conduct *tends* to disturb the public peace. *See State v. Oden* (since the disturbance was viewed in relation to the peace and quiet of the community, it was

not necessary that the girls themselves actually reacted to defendant's lewd comments). Additionally, we note that the size of the crowd or gathering is not solely determinative of whether defendant's conviction for disorderly conduct was proper. *See State v. Turley*, 164 Mont. 231, 521 P.2d 690 (1974) (the defendant was convicted of the crime of breach of the peace when only his wife and a third party were present to witness his conduct).

Defendant refers this court to New Mexico cases in which the evidence was held insufficient to sustain a conviction for disorderly conduct. For example, defendant argues that his situation is comparable to that discussed in *State v. Doe*, 92 N.M. 100, 583 P.2d 464 (1978). In *Doe*, officers stopped the car in which the defendant was a passenger. In a loud voice, the defendant asked officers why the car was stopped and why his friends were being harassed. A crowd was not gathering. There was no evidence that the defendant was causing consternation and alarm, or that his words or action would produce violence or disturb the peace. Although the defendant's fists were clenched, he made no gesture or movement toward the officers. The defendant nonprovocatively voiced his objection to the detention by the officers. The defendant did not use abusive language or fighting words.

The facts in *Doe* are distinguishable from the present situation. Here, defendant used provocative fighting words which were directed to a non-police officer. Police officers, by nature of their training, are generally expected to have a higher tolerance for offensive conduct and language. *See State v. Wade* (screaming obscenities and yelling "get the hell out of the house" do not constitute fighting words, particularly when addressed to police officers who are expected to exercise restraint). In addition, defendant's statements were made on a public sidewalk near several stores. Four or five people had gathered to watch the incident. Other people were walking in the area. Defendant was excited, pointed at Lujan, and provocatively raised his voice.

Another case defendant relies on is *State v. Florstedt*. In that case, the defendants had gone out to the country to watch a fight and had parked their cars on a dirt road in a manner which blocked the roadway. The state argued that the blocking of the road constituted disorderly conduct. Upon review, the court held that parking in a manner that blocked the roadway did not cause consternation and alarm or disturb the peace and quiet of the community. Again, *Florstedt* is clearly distinguishable from the present situation. In *Florstedt*, none of the defendants threatened the officer or anyone else, nor did they use any loud or profane language. In the present situation, however, defendant—while pointing and flailing his arms—directed loud and profane language to a non-officer.

In light of the above discussion, we are not convinced that there was insufficient evidence to support defendant's conviction for disorderly conduct. Defendant's words to Lujan amounted to "fighting words," which are likely to incite an immediate breach of the peace. *Chaplinsky*. In addition, defendant's conduct of getting excited, speaking in a loud voice, pointing at Lujan, and flailing his arms supported Officer Bencomo's reasonable belief that a fight was possible. Defendant's actions clearly disturbed the peace and quiet of the community.

### 2. Vagueness and Overbreadth

Defendant asserts that the disorderly conduct statute is void for vagueness. When a defendant challenges a statute as vague, the reviewing court presumes the statute is constitutional. *See State v. Segotta*, 100 N.M. 498, 672 P.2d 1129 (1983). The statute is considered in its entirety. Words in the statute are given their ordinary meaning, unless a contrary intent is indicated. *State v. Baldonado*, 92 N.M. 272, 587 P.2d 50 (Ct.App.1978). A statute is not void for vagueness if a reasonable and practical construction can be given to its language. *State v. Segotta*. To satisfy the constitutional requirements of due process, the statute must provide adequate warning to a person of ordinary intelligence that his conduct is prohibited. *State*

**478**

*v. Jim,* 107 N.M. 779, 765 P.2d 195 (Ct.App. 1988). The reviewing court must uphold the statute unless satisfied beyond all reasonable doubt that the legislature went outside the constitution in enacting the statute. *State v. Ball,* 104 N.M. 176, 718 P.2d 686 (1986).

 We hold that the disorderly conduct statute is not void for vagueness. The varied and limitless number of offenses that fall within the category of disorderly conduct defy any precise definitions in the statute. The statute does not dictate, however, that all conduct which tends to annoy another falls within the definition of disorderly conduct. Instead, the statute limits the proscribed conduct by including only conduct which tends to disturb the peace. Furthermore, the words in the statute are unambiguous and capable of being understood by the average person. In addition, the statute does not punish a person for conduct that offends a hypersensitive individual. Rather, the statute punishes only conduct which is offensive to the average person.

Defendant also complains that Section 30–20–1 is unconstitutionally overbroad. The general rule governing standing provides that a person to whom a statute may be constitutionally applied cannot challenge the statute on the ground that the statute may conceivably be applied unconstitutionally to others not before the court. *See Broadrick v. Oklahoma,* 413 U.S. 601, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973). However, an exception to the general rule is permitted when first amendment rights are involved. *See id.; Dombrowski v. Pfister,* 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *State v. Brecheisen,* 101 N.M. 38, 677 P.2d 1074 (Ct. App.1984). Thus, even though defendant's conduct was properly proscribed by the disorderly conduct statute, he has standing to raise the issue of overbreadth.

We are of the opinion that the statute under consideration is not overly-broad. Defendant argues that his conviction under the statute for disorderly conduct violates his right to free speech. We disagree. If a reasonable construction of Section 30–

20–1 is available in order to save the constitutionality of the statute, it should be employed. *See State v. Segotta.* By narrowly construing the statute to punish only "fighting words," we avoid any punishment of speech that is protected under the first and fourteenth amendments.

CONCLUSION

For the above reasons, we affirm the decision of the children's court to convict defendant for disorderly conduct.

IT IS SO ORDERED.

APODACA and HARTZ, JJ., concur.