572 S.E.2d 476

**CITY OF LANDRUM, Appellant,**

v.

**Michael James SARRATT, Respondent.**

**No. 3569.**

Court of Appeals of South Carolina.

Heard Sept. 18, 2002.

Decided Nov. 18, 2002.

140

Harold Lloyd Howard, of Landrum, for Appellant.

Ricky Keith Harris, of Spartanburg, for Respondent.

CURETON, J.:

Michael J. Sarratt was charged with public disorderly conduct. Sarratt waived his right to a jury trial and requested a bench trial. The municipal judge convicted Sarratt and ordered him to pay a fine of $112 or serve 20 days imprisonment. Sarratt appealed to the circuit court. The circuit court reversed the conviction. The City of Landrum appeals. We reverse.

## FACTS

Sarratt was arrested for yelling profanities at Franklin Keith Hembree and his mother, June Hembree, as they left the Landrum Municipal Court and walked across the municipal parking lot. Franklin testified Sarratt called him a crack head, loudly yelled profanities, and called his mother a "bitch." June testified Sarratt called her names and used the "f" word.

## ISSUE

Whether the circuit court erred in reversing Sarratt's conviction, finding that although Sarratt used profanity in a public place, profane language alone is insufficient to constitute a violation of the public disorderly conduct statute.

## STANDARD OF REVIEW

"In criminal appeals from magistrate or municipal court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception. In reviewing criminal cases, this court may review errors of law only." *State v. Henderson,* 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct.App.2001) (internal citations omitted), *cert. denied,* Mar. 22, 2002.

## LAW/ANALYSIS

S.C.Code Ann. § 16–17–530 provides:

> Any person who shall (a) be found on any highway or at any public place or public gathering in a grossly intoxicated condition or otherwise conducting himself in a disorderly or boisterous manner, (b) use obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church ... shall be deemed guilty of a misdemeanor and upon conviction shall be fined not more than one hundred dollars or be imprisoned for not more than thirty days.

S.C.Code Ann. § 16–17–530 (1985). The circuit court found that "profane language alone cannot constitute a violation of the public disorderly conduct statute in light of the First Amendment to the Constitution of the United States." Rather, the circuit court found that profane language must be accompanied by fighting words or other behavior such as gross intoxication.

■ The First Amendment prohibits laws that abridge the freedom of speech. U.S. Const. amend. I; S.C. Const. art. I, § 2. There are, however, certain classes of speech that are not afforded the protection of the First Amendment. *Chaplinsky v. New Hampshire,* 315 U.S. 568, 571–72, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

■ One such class of speech, fighting words, is defined as words that "by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Id.* at 572, 62 S.Ct. 766. Fighting words must be inherently likely to induce the ordinary person to react violently. *Cohen v. California,* 403 U.S. 15, 20, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971). The fact that words are vulgar or offensive is not alone sufficient to classify them as fighting words, thereby removing them from the protection provided by the First Amendment. *See Gooding v. Wilson,* 405 U.S. 518, 527, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972) (striking Georgia statute that, as construed, prohibited the use of words that disgraced or insulted the listener, but did not constitute fighting words); *In re Louise C.,* 197 Ariz. 84, 3 P.3d 1004, 1005–07 (Ct.App.1999) (holding juvenile's use of "f" word in argument with principal and another student over whether student had cheated her out of money, although offensive and unacceptable, did not constitute fighting words); *Ware v. City & County of Denver,* 182 Colo. 177, 511 P.2d 475,

475–76 (1973) (stating "one man's vulgarity is another's lyric" and holding defendant's statement "f—— you" during political speech at university not fighting words); *Downs v. State*, 278 Md. 610, 366 A.2d 41, 42–46 (1976) (stating the defendant's use of profanity and racial epithets in crowded, noisy restaurant in loud voice to fellow diners not fighting words as not directed to anyone in particular; finding the use of the "f" word not punishable absent compelling reasons); *City of Bismarck v. Schoppert*, 469 N.W.2d 808, 811 (N.D.1991) (in finding "f—— you" not fighting words the court stated: "It is . . . not a crime in this country to be a boor, absent resort to fighting words.").

■ However, the determination of whether profane words constitute fighting words depends upon the circumstances surrounding their utterance. *Lewis v. City of New Orleans*, 415 U.S. 130, 135, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974) (Powell, J., concurring). Some of the factors to consider in determining if profanity constitutes fighting words are the presence of bystanders, the accompaniment of other aggressive behavior, and whether the words are repeatedly uttered. *See State v. Szymkiewicz*, 237 Conn. 613, 678 A.2d 473, 475–79 (1996) (finding fighting words where defendant repeatedly cursed police officer and store detective and threatened store detective, and uproar occurred in front of other customers who congregated to watch); *State v. Hammersley*, 134 Idaho 816, 10 P.3d 1285, 1287–89 (2000) (finding adult in vehicle who yelled "shut your f——ing mouth, you b—— . . ." to 13 year old friend of adult's daughter and two other preteens on street used fighting words); *State v. James M.*, 111 N.M. 473, 806 P.2d 1063, 1065–66 (1990) (holding minor's repeated yelling of "f—— you" while flailing arms and pointing at another individual on a public sidewalk as a small crowd congregated constituted fighting words); *In re S.J.N–K.*, 647 N.W.2d 707, 709–12 (S.D.2002) (stating the context in which the language is used must be considered; finding minor's repeated use of "f—— you" and middle finger gesture toward a school principal and his family in a store parking lot, continuing while minor tailgated principal as principal drove away, constituted fighting words).

■ Whether a communication constitutes fighting words also "depends in large part on the addressee of the communications." Aviva O. Wertheimer, *The First Amendment Distinction Between Conduct and Content: A Conceptual Framework for Understanding Fighting Words Jurisprudence,* 63 Fordham L.Rev. 793, 813 (1994). In *Cohen,* the defendant's display of the words "F—— the Draft" on the back of his jacket were determined not fighting words. 403 U.S. at 20–22, 91 S.Ct. 1780. The court determined "[n]o individual actually or likely to be present could reasonably have regarded the words on [Cohen's] jacket as a direct personal insult." *Id.* at 20, 91 S.Ct. 1780. The court explained that fighting words must be directed at someone in particular. *Id.*

In *State v. Perkins,* our supreme court concluded a conviction under section 16–17–530 required more than raised voices. 306 S.C. 353, 355, 412 S.E.2d 385, 386 (1991). Without fighting words, the defendants in *Perkins* could not be convicted. *Id.* Likewise, in *State v. Pittman,* this court stated if a defendant's "only disorderly behavior had been to use profanity, ... he could not be arrested for public disorderly conduct." 342 S.C. 545, 548, 537 S.E.2d 563, 565 (Ct.App.2000). Both of these cases, however, involved law enforcement personnel on the receiving end of the verbal abuse. *See Perkins,* 306 S.C. at 354, 412 S.E.2d at 386 (sheriff's department employee); *Pittman,* 342 S.C. at 546, 537 S.E.2d at 564 (sheriff's department officer). The *Perkins* court, relying on *City of Houston v. Hill,* noted the narrow application of the fighting words exception in cases involving words addressed to a police officer. *Perkins,* 306 S.C. at 354–55, 412 S.E.2d at 386. *See City of Houston v. Hill,* 482 U.S. 451, 462, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987) (limiting the fighting words doctrine when the addressee, as a properly trained police officer, is reasonably expected to exercise a higher degree of restraint than the average citizen).

More recently, this court affirmed the trial court's denial of a defendant's motion for a directed verdict on his charge of disorderly conduct in violation of section 16–17–530. *State v. LaCoste,* 347 S.C. 153, 163–64, 553 S.E.2d 464, 470 (Ct.App. 2001), *cert. granted,* Feb. 25, 2002. LaCoste threw up his arms in a hostile manner and yelled obscenities at a police officer, insisting he would not comply with the officer's de-

mands. After his arrest, LaCoste repeatedly shouted obscenities, challenging the officer, and taunting the officer and another officer regarding their lack of success in bringing him under control. This court found there was sufficient evidence to enable the trial court to deny LaCoste's motion for directed verdict. *Id.*

■ Applying the fighting words doctrine to the facts of this case, we agree with the magistrate and conclude Sarratt's remarks, accompanied with the loud manner in which they were spoken, constituted fighting words. We find Sarratt's language, especially once he directed vulgarities at Franklin's mother, would incite an ordinary person to violence. Accordingly, the circuit court's order reversing Sarratt's conviction is

**REVERSED.**

SHULER, J., concurs.

HEARN, C.J., dissents in separate opinion.

HEARN, C.J.:

Because I disagree with the majority that the evidence supports the finding that the statements uttered by Sarratt constitute fighting words, I respectfully dissent.

The United States Supreme Court has recognized the power of states to punish fighting words under carefully drawn statutes which do not infringe upon protected forms of speech. *Gooding v. Wilson,* 405 U.S. 518, 523, 92 S.Ct. 1103, 1107, 31 L.Ed.2d 408 (1972). The Court defines fighting words as "those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Chaplinsky v. New Hampshire,* 315 U.S. 568, 572, 62 S.Ct. 766, 769, 86 L.Ed. 1031 (1942). The majority correctly recognizes that the vulgarity or offensiveness of words is not by itself sufficient to classify them as fighting words. *Wilson,* 405 U.S. at 527, 92 S.Ct. at 1108. However, the majority holds the language used by Sarratt constituted fighting words finding that an ordinary person would be incited to violence in light of the comments made by Sarratt, the tone in which they were spoken, and the fact that vulgarities were directed at Mrs. Hembree. I believe the majority incorrectly reaches this conclusion because there is no evidence in the record suggesting that Sarratt's com-

ments had any effect on the Hembrees other than to offend them. Absent evidence that Sarratt's statements tended to cause the Hembrees to react violently, his words do not fall within the narrowly tailored exception to protected speech set forth in *Chaplinsky*.

Cases interpreting *Chaplinsky* have made it clear that states may only prohibit speech that has "a direct tendency to cause acts of violence *by the person to whom, individually, the remark is addressed." Wilson*, 405 U.S. at 524, 92 S.Ct. at 1107 (emphasis added). *See also Diehl v. State*, 294 Md. 466, 474–75, 451 A.2d 115, 120 (1982) (stating fighting words are those that "would produce an uncontrollable impulse to violence . . ."). "In effect, 'fighting' words have been recognized as having some social value and are punishable now not on a 'per se' basis, but only when there is a likelihood of imminent disturbance." *Downs v. State*, 278 Md. 610, 615, 366 A.2d 41, 44 (1976) (citations omitted). The mere use of profane or unpopular language is not enough. "Language likely to offend the sensibility of some listeners is now fairly commonplace in many social gatherings as well as in public performances." *Eaton v. City of Tusla*, 415 U.S. 697, 700, 94 S.Ct. 1228, 1231, 39 L.Ed.2d 693 (1974) (Powell, J., concurring). This is the very nature of free speech in our society. The Supreme Court of Minnesota recognized the inherent difficulty in determining the relative offensiveness of any particular expression. The court stated,

> To begin with, curses, oaths, expletives, . . . and the whole vocabulary of insults are not intended or susceptible of literal interpretation. They are expressions of annoyance and hostility—nothing more. To attach greater significance to them is stupid, ignorant, or naive. Their significance is emotional, and it is not merely immeasurable but variable.

*City of Saint Paul v. Morris*, 258 Minn. 467, 481, 104 N.W.2d 902, 910 (1960). The court further noted that the emotional quality of words varies from time to time, from region to region, and as between social and cultural groups. *Id.*

Before one may be punished for spoken words, there must be evidence that the abusive utterance itself tended to incite an immediate breach of the peace. *See Downs*, 278 Md. at 618, 366 A.2d at 46 ("And, even if someone were offended by

[the abusive statement], there was no evidence that any person was so aroused as to respond in a violent manner."). The State may not assume that provocative expressions will incite such violence. Rather, the State must carefully consider the surrounding circumstances to determine "whether the expression 'is directed to inciting or producing imminent lawless action and is likely to incite or produce such action.'" *Texas v. Johnson,* 491 U.S. 397, 409, 109 S.Ct. 2533, 2542, 105 L.Ed.2d 342 (1989) (refusing to accept the State's argument that it need only demonstrate a potential for breach of the peace). Certainly, words may convey anger and frustration and yet not rise to a level such as to provoke a violent reaction from the listener. *Lewis v. City of New Orleans,* 415 U.S. 130, 135, 94 S.Ct. 970, 973, 39 L.Ed.2d 214 (1974) (Powell, J., concurring). It is not enough that the words merely arouse anger or resentment. *See Skelton v. City of Birmingham,* 342 So.2d 933, 937 (Ala.Crim.App.1976).

Here, the record shows only that a verbal exchange occurred between the parties during which profanity was used. Upon finding Sarratt guilty, the magistrate stated, "On the charge of public disorderly conduct the way I understand the law ... is that it was loud and boisterous, there was cursing and all this...." The magistrate makes no finding that there was an imminent risk of violence resulting from Sarratt's statements nor does the record suggest that any party involved was incited to react violently. Moreover, the officer who arrested Sarratt did so based only on statements given to him by the Hembrees, and he did not personally observe the altercation. Accordingly, it is impossible for the officer to have assessed whether the comments made by Sarratt, and the circumstances under which they were made, were so abusive towards the Hembrees that an immediate violent reaction was imminent. *See State v. James,* 111 N.M. 473, 475, 806 P.2d 1063, 1065 (N.M.Ct.App.1990) (considering the fact that the arresting officer felt it necessary to step between the arguing parties as evidence that a fight was likely to ensue).

While this court may find it deplorable that Sarratt directed abusive language towards Mr. Hembree and his mother, we must not predicate a conviction for such conduct on our view of poor taste. Instead, the evidence must show that there was

an imminent risk of violent reaction to Sarratt's language. In the absence of such evidence, Sarratt's expressions, although profane in nature, are entitled to the protection granted by the First Amendment to the Constitution. Accordingly, I would affirm the circuit court's order reversing Sarratt's conviction.