**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 15-2133

KRYSTAL JOHNSON,

> Plaintiff – Appellant,

> v.

JESSE QUATTLEBAUM, in his individual and official capacities; TOWN OF SALUDA; HONORABLE ALAN WILSON, in his official capacity,

> Defendants – Appellees.

Appeal from the United States District Court for the District of South Carolina, at Anderson. Bruce H. Hendricks, District Judge. (8:14-cv-03751-MGL-JDA)

Argued: September 21, 2016          Decided: November 2, 2016

Before DUNCAN, KEENAN, and DIAZ, Circuit Judges.

Affirmed by unpublished opinion. Judge Duncan wrote the opinion, in which Judge Keenan and Judge Diaz joined.

**ARGUED:** Howard Walton Anderson III, LAW OFFICE OF HOWARD W. ANDERSON III, LLC, Pendleton, South Carolina, for Appellant. Eugene Matthews, RICHARDSON PLOWDEN & ROBINSON, P.A., Columbia, South Carolina, for Appellees. **ON BRIEF:** Sheila M. Bias, RICHARDSON PLOWDEN & ROBINSON, P.A., Columbia, South Carolina; Alan Wilson, Attorney General, Robert D. Cook, Solicitor General, J. Emory Smith, Jr., Deputy Solicitor General, OFFICE OF THE SOUTH CAROLINA ATTORNEY GENERAL, Columbia, South Carolina, for Appellee Honorable Alan Wilson; Michael S. Pauley,

THE PAULEY LAW FIRM, LLC, Lexington, South Carolina, for Appellees Jesse Quattlebaum and Town of Saluda.

———————————

Unpublished opinions are not binding precedent in this circuit.

DUNCAN, Circuit Judge:

Krystal Johnson ("Johnson") challenges the constitutionality of a South Carolina statute that prohibits the "use [of] obscene or profane language" within "hearing distance of any schoolhouse or church." S.C. Code § 16-17-530(b). Finding that an authoritative state court decision sufficiently narrowed the statute to cover only unprotected speech, and that it was not unconstitutionally vague, the district court dismissed her claims for declaratory and injunctive relief. For the reasons that follow, we affirm.

I.

In March 2014, Johnson summoned police to a house she was visiting in the Town of Saluda, South Carolina, seeking assistance retrieving her car keys from a family member. The house to which Officer Jesse Quattlebaum ("Quattlebaum") and another officer responded was located within 50 to 60 yards of a local church. When the officers arrived, Johnson allegedly exclaimed, "[t]his is some motherfucking shit," J.A. 24, and Quattlebaum placed her under arrest.

In July 2014, Quattlebaum prosecuted Johnson in Saluda Municipal Court for violating a provision of South Carolina's public disorderly conduct statute, S.C. Code Section 16-17-

3

530(b) ("the Statute").[1]  The Statute provides that a person is guilty of a misdemeanor if they "use obscene or profane language on any highway or at any public place or gathering or in hearing distance of any schoolhouse or church." S.C. Code § 16-17-530(b).  At trial, Quattlebaum testified both as to the words Johnson used and the distance from the church.  The trial court granted Johnson's motion for a directed verdict, ruling that Johnson's speech did not qualify as "profane language" under the Statute.  J.A. 27.

In September 2014, Johnson filed this complaint in the United States District for the District of South Carolina, alleging four causes of action, only one of which--Count IV--is at issue in this appeal.  Count IV alleged that the Statute is unconstitutionally overbroad and vague.  Johnson sought declaratory and injunctive relief under Ex parte Young, 209 U.S. 123 (1908), and 42 U.S.C. § 1983 against Quattlebaum and South Carolina Attorney General Alan Wilson ("Wilson").  The district court granted Wilson's motion to dismiss Count IV and denied Johnson's motion for summary judgment on Count IV, concluding

---

[1] In South Carolina, the state supreme court has "approved the practice of allowing law enforcement officers to prosecute misdemeanor cases in magistrate's and municipal court." Easley v. Cartee, 424 S.E.2d 491, 492 (S.C. 1992).

4

that the Statute is not unconstitutionally overbroad or vague on its face.

## II.

We review the district court's granting of a motion to dismiss and denial of summary judgment de novo. Johnson v. Am. Towers, LLC, 781 F.3d 693, 706 (4th Cir. 2015); Francis v. Booz, Allen & Hamilton, Inc., 452 F.3d 299, 302 (4th Cir. 2006).

In considering a constitutional challenge, we bear in mind that "[e]very statute is presumed to be constitutional." United States v. Bollinger, 798 F.3d 201, 207 (4th Cir. 2015) (alteration in original) (quoting Munn v. Illinois, 94 U.S. 113, 123 (1876)), cert. denied, 136 S. Ct. 2448 (2016). On a facial challenge to a state statute, this court "must take the statute as though it read precisely as the highest court of the State has interpreted it." Kolender v. Lawson, 461 U.S. 352, 355 n.4 (1983) (quoting Wainwright v. Stone, 414 U.S. 21, 22–23 (1973)) (internal quotation mark omitted). If there is no authoritative precedent from the state supreme court, this court may look to an intermediate appellate court's construction of the statute. Gooding v. Wilson, 405 U.S. 518, 525 n.3 (1972); see also Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc., 455 U.S. 489, 494 n.5 (1982) ("In evaluating a facial challenge to a state law, a federal court must, of course, consider any

5

limiting construction that a state court or enforcement agency has proffered.").

III.

For the reasons that follow, we first conclude that the Statute reaches only speech unprotected by the First Amendment and is therefore not unconstitutionally overbroad. Next, we conclude that the Statute is not impermissibly vague under the Due Process Clause of the Fourteenth Amendment because it sufficiently defines the conduct it proscribes.

A.

Under the First Amendment, "a law may be invalidated as overbroad if 'a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep.'" United States v. Stevens, 559 U.S. 460, 473 (2010) (quoting Wash. State Grange v. Wash. State Republican Party, 552 U.S. 442, 449 n.6 (2008)). On a facial overbreadth challenge, "a court's first task is to determine whether the enactment reaches a substantial amount of constitutionally protected conduct. If it does not, then the overbreadth challenge must fail." Vill. of Hoffman Estates, 455 U.S. at 494. Because the South Carolina Supreme Court has not authoritatively construed the provision, we look to the South Carolina Court of Appeals for guidance in determining whether

6

the Statute reaches a substantial amount of constitutionally protected conduct. Gooding, 405 U.S. at 527 n.3.

In City of Landrum v. Sarratt, 572 S.E.2d 476 (S.C. Ct. App. 2002), the Court of Appeals reviewed a conviction under the Statute in the context of facts not unlike those presented here. Sarratt was arrested for "yelling profanities" at two family members in a municipal parking lot.[2] 572 S.E.2d at 477. In appealing his conviction, he argued that, in light of the First Amendment, the Statute cannot criminalize profane language absent fighting words. The Court of Appeals recognized that the First Amendment erects a barrier to speech restrictions and analyzed what kind of speech constitutes unprotected fighting words. Id. at 477–79. The court concluded that, in the context and manner in which they were uttered, Sarratt's curse words constituted fighting words. Id. at 479. It therefore upheld his conviction. Id.

Johnson does not dispute that Sarratt construed the Statute to require fighting words to sustain a conviction. Appellant's Br. at 14. Rather, she urges us to disregard that narrowing construction. She contends that Sarratt is not authoritative because it (1) conflicts with South Carolina Supreme Court

---

[2] Sarratt used "the 'f' word," and also called a man a "crack head" and the man's mother a "bitch." 572 S.E.2d at 477.

7

precedent, (2) did not receive the tacit approval of the South Carolina Supreme Court through denial of a petition for certiorari, and (3) sustains a conviction for constitutionally protected speech. After reviewing each argument in turn, we find no compelling reason to reject Sarratt.

First, Johnson argues that Sarratt cannot be authoritative because it conflicts with two prior South Carolina Supreme Court decisions, State v. Roper, 260 S.E.2d 705 (S.C. 1979), and Georgetown v. Scurry, 73 S.E. 353 (S.C. 1912). We disagree.

Roper concerned an evidentiary issue, and the court did not need to consider the Statute's constitutionality. In Roper, officers arrested the defendants for violating the Statute when they "shout[ed] profanities" at the officers who pulled them over. 260 S.E.2d at 706. The defendants argued that evidence obtained after their arrest should be excluded because the officers lacked probable cause to arrest them under the Statute, which they argued is unconstitutionally overbroad. Id. The court held that, even assuming the Statute was unconstitutionally overbroad, the officers had probable cause to arrest the defendants because the officers acted in good faith pursuant to a presumptively valid statute. Id. at 707. Sarratt is thus not inconsistent with Roper.

Nor does the South Carolina Supreme Court's decision in Scurry undermine Sarratt. In Scurry, a case decided three

decades before the United States Supreme Court officially recognized the fighting words doctrine, the South Carolina Supreme Court considered a conviction under a local ordinance that prohibited, among other things, "using any profane or obscene language, to the annoyance of any citizen." 260 S.E.2d at 353. The Scurry court defined profane language as "language irreverent toward God or holy things." Id. at 354. The court did not mention the First Amendment or suggest any constitutional concerns with the ordinance at issue. Scurry's definition of "profane language" applied to a different enactment than the one under review here. And Sarratt appropriately narrowed the definition in the Statute in light of First Amendment concerns. Scurry therefore does not affect Sarratt's precedential value.[3]

---

[3] The two supplemental cases Johnson submitted interpreting a prior version of the Statute also do not alter our conclusion about Sarratt. In State v. Hanapole, 178 S.E.2d 247 (S.C. 1970), the South Carolina Supreme Court ruled that the trial court should have directed a verdict in favor of several protesters who were charged with violating the Statute, but as to whom there was no evidence they "used vulgar or obscene language or conducted themselves in a disorderly or boisterous manner." 178 S.E.2d at 267. The case stands for the uncontroversial proposition that a directed verdict is appropriate where there is no evidence that defendants committed acts punishable under the law. Similarly, in State v. Gist, 116 S.E.2d 856 (S.C. 1960), the South Carolina Supreme Court set aside a minor's guilty plea for violating the Statute when he used "abusive, obscene, vulgar, and profane language" over the telephone, but not, as required under the Statute, in a public place or within hearing distance of a school or church. (Continued)

Second, Johnson argues that because Sarratt did not appeal his conviction to the South Carolina Supreme Court, it does not have that court's imprimatur and thus lacks authority. This argument has no merit. Intermediate appellate opinions can authoritatively construe state law, particularly where, as here, they are binding statewide and have been so for a number of years. Gooding, 405 U.S. at 525 n.3; Kolender, 461 U.S. at 357 n.4.[4]

Third, Johnson argues that Sarratt lacks authority because it upheld a conviction for what Johnson calls constitutionally protected speech. Johnson misconstrues our inquiry. We rely on Sarratt insofar as it provides the state's interpretation of the Statute. Sarratt construed the Statute to require fighting words to sustain a conviction. We are not reviewing whether Sarratt correctly applied that standard to the facts of its case or whether the facts of this case would warrant a conviction. Future courts would rightly look to Chaplinsky v. State of New

---

116 S.E.2d at 857. Like Hanapole, Gist does not hold that such vulgar or abusive language would be sufficient for a conviction, but only that where one necessary element of the crime is missing, a conviction cannot stand. No First Amendment issues were discussed in either case.

[4] The Kolender Court did note that in the state appellate case it relied on, the state supreme court had also "refused review," 461 U.S. at 355 n.4, but we do not think this one factor determinative.

10

Hampshire, 315 U.S. 568 (1942), and its progeny to determine exactly what constitutes "fighting words," not a solitary appellate court application.

In sum, we conclude that Sarratt authoritatively construes the Statute to require fighting words for a conviction, speech that Johnson concedes is unprotected by the First Amendment. Therefore, because the Statute covers only constitutionally unprotected speech, it is not overbroad.

B.

We turn next to Johnson's argument that the Statute is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment. A state violates due process if it deprives a person of "life, liberty, or property under a criminal law so vague that it fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." Johnson v. United States, 135 S. Ct. 2551, 2556 (2015).[5] Although courts sometimes

---

[5] We note that, in its ruling, the district court relied on the statement in Vill. of Hoffman Estates that, where no constitutionally protected conduct is concerned, courts "should uphold the [vagueness] challenge only if the enactment is impermissibly vague in all of its applications." 455 U.S. at 495 (emphasis added). However, the Supreme Court recently backed away from this pronouncement: "[O]ur holdings squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." Johnson, 135 S. Ct. at 2561. That clarification does not affect the outcome here.

11

separately analyze whether a challenged law provides sufficient notice to citizens and guidance to law enforcement, these analyses often converge, as they do here. See, e.g., Hill v. Colorado, 530 U.S. 703, 732–33 (2000) (concluding that both standards were met for the same reason).

Johnson argues that the phrases "profane speech" and "hearing distance" are impermissibly vague. In Chaplinsky, the Supreme Court concluded that the state court's construction of a statute to cover only unprotected fighting words "necessarily dispose[d] of appellant's contention that the statute [was] so vague and indefinite as to render a conviction thereunder a violation of due process." 315 U.S. at 574. Therefore, our conclusion that Sarratt authoritatively narrowed the Statute to fighting words disposes of Johnson's argument that the phrase "profane speech" is vague. Johnson's arguments about the phrase "hearing distance" are similarly unpersuasive. She offers two ways that the legislature could clarify the Statute, but neither clarification is constitutionally required.

Johnson first argues that the legislature could clarify the law by stating an exact distance, such as "within 50 feet of a schoolhouse or church." But the Supreme Court has never required this kind of precision. In Cox v. State of Louisiana, 379 U.S. 559 (1965), the Supreme Court reviewed a statute that prohibited picketing or parading "near" a courthouse. The Court

12

determined that the "lack of specificity in a word such as 'near'" did not render the statute unconstitutionally vague. Id. at 568. Instead, the statute "fore[saw] a degree of on-the-spot administrative interpretation by officials charged with responsibility for administering and enforcing it." Id.;[6] see also Grayned v. City of Rockford, 408 U.S. 104, 111 (1972) (concluding that the term "adjacent" in a criminal ordinance set "a sufficiently fixed place" in which certain actions were prohibited). Furthermore, the South Carolina legislature may have desired a flexible standard to account for the fact that speech can vary in volume; thus, the "hearing distance" from one's speech varies with the loudness of one's words.

Johnson also argues that the law could be more precise if it included a scienter requirement, such that a person could only be punished if she knew a school or church was within hearing distance. Although a scienter requirement can be a relevant factor in judging the contours of a law, Hill, 530 U.S.

---

[6] It is true, as Johnson points out, that the officers in Cox informed the protesters where they could assemble, which the protesters relied on as an official interpretation of the term "near." But the challenger in Cox was raising "constitutional objections arising from [his] conviction on the particular facts of [his] case," 379 U.S. at 568, not the facial vagueness challenge that Johnson asserts. As to any facial vagueness, Cox stated that "this lack of specificity [in the word "near"] may not render the statute unconstitutionally vague, at least as applied to a demonstration within the sight and hearing of those in the courthouse." Id.

at 732, Johnson cites no authority for the proposition that such a requirement is necessary. In the Statute, the phrase "hearing distance" necessarily encompasses only a relatively short distance from the speech, which will often be readily apparent to the speaker. Because the phrase "hearing distance" limits where conduct must occur to be punishable, some flexibility in the terms used does not offend due process.

In short, the South Carolina Statute here does not violate the Due Process Clause of the Fourteenth Amendment. It does not "fail[] to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits." Hill, 530 U.S. at 732. On the contrary, it forbids a narrow category of unprotected speech--fighting words--and only when that speech occurs within hearing distance of a school or church. Similarly, it is not "so standardless that it invites arbitrary enforcement." Johnson, 135 S. Ct. at 2556. Police officers cannot arbitrarily decide what conduct to punish under the Statute; both the fighting-words requirement and the proximity limitation circumscribe their discretion. "'As always, enforcement requires the exercise of some degree of police judgment,' and the degree of judgment involved here is acceptable." Hill, 530 U.S. at 733 (quoting Grayned, 408 U.S. at 114).

14

IV.

We conclude that the Statute is not unconstitutionally overbroad or vague. South Carolina's appellate court has confined the Statute to fighting words, obviating any overbreadth concerns, and the Statute defines the conduct it prohibits with sufficient definiteness. Accordingly, Johnson's facial challenges fail.

The order of the district court is therefore

AFFIRMED.