625 P.2d 1242

**CITY OF ALAMOGORDO,
Plaintiff-Appellee,**

v.

**Jeffrey OHLRICH, Defendant-Appellant.**

**No. 4833.**

Court of Appeals of New Mexico.

Feb. 19, 1981.

726

Peter M. Hebard, Cooperating Atty. for the American Civil Liberties Union of New Mexico, Alamogordo, Raymond Schowers, Legal Director, American Civil Liberties Union of New Mexico, Albuquerque, for defendant-appellant.

Frank K. Wilson, Municipal Atty., City of Alamogordo, Alamogordo, for plaintiff-appellee.

OPINION

HENDLEY, Judge.

Defendant appeals his disorderly conduct conviction pursuant to § 6–2–8 of the Codified Ordinances of the City of Alamogordo. Defendant raised three points with respect to subsection (D): (1) the statutory construction of the words "average person"; (2) the unconstitutionality of the subsection as applied to the facts; and (3) the insufficiency of the evidence to sustain a conviction. Point three is dispositive and we reverse.

About 11:00 P.M. defendant was working as a disc jockey at a radio station. He observed Officer Compton stopping a motorist on the street for a traffic offense. Defendant stepped outside to observe the incident, returned to the station to re-cue more music, then again stepped outside. Compton testified that defendant shouted to him, "You mother fucking son-of-a-bitch" as Compton got back into his car after the stop. Compton assumed that defendant, who was standing about twenty

yards away, shouted at him. Compton got mad and decided to arrest defendant on the basis of the words he allegedly spoke.

Defendant was charged with violating subsections (A) and (D) of the ordinance: *DISORDERLY CONDUCT.* Disorderly conduct consists of either:

A. Engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which creates a clear and present danger of violence that tends to disturb the public peace; or

\* \* \* \* \* \*

D. Using, in any public place, words which are inherently likely to provoke an immediate violent reaction in an average person to whom such words were addressed.

The City in its Answer Brief states that it "makes no claim that Defendant was convicted by the District Court of violating Subsection A of Section 6–2–8", primarily because there was insufficient evidence to establish that defendant's conduct created "a clear and present danger of violence that tends to disturb the public peace." Thus, we only review the facts in relation to subsection (D).

The ordinance speaks of "an average person to whom such words were addressed." A trained police officer is not an average person. Compton had been a police officer for over nine and one-half years and was familiar in using restraint in dealing with the public. *See also*, Justice Powell's concurrence in *Lewis v. City of New Orleans*, 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). One element of the ordinance is "an immediate violent reaction." Compton testified that after hearing the words allegedly spoken by defendant, he saw the defendant twenty yards away, decided to arrest him for disorderly conduct, got in his car and called for assistance, and pulled it around to defendant's position. Compton then emerged from his car with his slapper. The facts do not support the conviction under the ordinance. *See, Matter of Welfare of S. L. J.*, 263 N.W.2d 412 (Minn.1978),

where under somewhat similar facts, the Minnesota Supreme Court found no disorderly conduct. *See also, State v. Doe*, 92 N.M. 100, 583 P.2d 464 (1978).

Reversed and remanded for dismissal of the conviction because of a failure of proof. *State v. Losolla*, 84 N.M. 151, 500 P.2d 436 (Ct.App.1972).

HERNANDEZ, C. J., dissents.

LOPEZ, J., concurs.

HERNANDEZ, Chief Judge (dissenting).

I dissent. Appellant's version of the incident and that of the officer differed. However, the trial court accepted the officer's version and that conclusion, of course, is binding upon us.

> [I]t is well understood that the right of free speech is not absolute at all times and under all circumstances. There are certain well-defined and narrowly limited cases of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. *These include* the lewd and obscene, *the profane*, the libelous, *and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.* It has been well observed that such utterances are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly out-weighed by the social interest in order and morality. [Emphasis added.]

*Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942).

> This Court has also held that the States are free to ban the simple use, without a demonstration of additional justifying circumstances, of so-called "fighting words", those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction.

*Cohen v. California*, 403 U.S. 15, 91 S.Ct. 1780, 29 L.Ed.2d 284 (1971).

As can be seen the ordinance punishes verbal acts. A conviction must rest upon the essential offensiveness of the words. The test of the offensiveness of the words is whether they "are inherently likely to provoke an immediate violent reaction in an average person." The test is not whether they are inherently likely to provoke an immediate violent reaction in the particular person to whom they are addressed. There is no doubt in my mind that those words are so insulting and offensive that they would provoke an immediate violent reaction in the average person.

There is yet another aspect of the majority opinion with which I am in fundamental disagreement and that is that "a trained police officer is not an average person." Implicit in this statement is the position that ordinances and statutes such as the subject ordinance do not apply to them, the rationale being that police officers by reason of the nature of their work and training become inured to being reviled. Assuming, but not necessarily agreeing, that they do become inured, this in my opinion certainly does not justify such a position. Police officers are a vital part of the criminal justice system, and in regard to engendering and maintaining respect for law and order perhaps the most vital part, in that they are the part that the great majority of people have the most frequent contact, if not the only contact. To hold, therefore, that individuals can revile police officers with impunity is to foster disrespect for law and order.

I would affirm.