667 P.2d 459

**STATE of New Mexico, Plaintiff-Appellee,**

v.

**Mark WADE, Defendant-Appellant.**

**No. 7038.**

Court of Appeals of New Mexico.

July 12, 1983.

Paul Bardacke, Atty. Gen., Ida M. Lujan, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

Janet E. Clow, Chief Public Defender, Henry R. Quintero, Asst. Appellant Defender, Santa Fe, for defendant-appellant.

OPINION

NEAL, Judge.

What is the meaning of "abusing any * * peace officer" in NMSA 1978, § 30–22–1(D) (Cum.Supp.1982.)? The defendant, convict-

ed of abusing a policeman, contends that "abusing any * * * peace officer" in § 30–22–1(D) is void for vagueness or, alternatively, overbroad. We reverse because the evidence is insufficient to support the conviction, and do not reach the constitutional issues.

On March 24, 1982, two Bernalillo County Sheriff's Department deputies were dispatched to the defendant's home. There had been a family fight, and the defendant's wife had called the police. The defendant's wife had been drinking and the defendant told her to leave the house. She was going to take their infant daughter with her. The defendant, sober, objected. The defendant's wife, testifying as a witness for the State, said that the defendant had not threatened her or become violent with her or the child.

The deputies stated that when they arrived they were invited into the house by the defendant's wife. When they entered the house the defendant started yelling at them. He tried to walk past the officers and one of them grabbed his arm. He ten stepped up on the couch, screaming and yelling that he wanted to see the patrol commander and that he wanted the officers to "get the hell out of the house." He was upset because he had not called them. There was evidence that he used obscenities. One of the officers, Deputy Garcia, testified that the defendant made no threatening gestures. Deputy Garcia testified that the defendant's yelling and screaming interfered with their investigation, but on cross-examination he admitted that he could hear what the defendant's wife said to him.

At the close of the evidence the trial judge found the defendant guilty of "abuse of a police officer", and sentenced him to a ninety-day deferred sentence. The written judgment and sentence, however, finds the defendant guilty of "Interfering with a Peace Officer." Section 30–22–1 is entitled "Resisting, evading or obstructing an officer." Interfering with a peace officer is not a crime. On remand this error should be corrected. NMSA 1978, Crim.P.R. 57.1 (Repl.Pamp.1980).

"ABUSING"

"[A]busing any * * * peace officer" is a misdemeanor under § 30–22–1(D), *supra*. As used in this statute, what does "abusing" mean?

A review of § 30–22–1, *supra*, in its entirety, indicates that "Resisting, evading or obstructing an officer" primarily consists of physical acts of resistance. "Abuse", however, also refers to speech, since one of the primary meanings of the word is " 'to attack or injure with words.' " *See State v. Boss*, 195 Neb. 467, 238 N.W.2d 639 (1976), quoting Webster's Third International Dictionary (Unabr.1961).

By using the word "abusing" the Legislature has prohibited certain speech. This it may do so long as the statute does not offend the First and Fourteenth Amendments, *Gooding v. Wilson*, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972), and Art. II, § 17 of our New Mexico Constitution.

The right of free speech is not absolute. As stated in *Chaplinsky v. New Hampshire*, 315 U.S. 568, 62 S.Ct. 766, 86 L.Ed. 1031 (1942):

There are certain well-defined and narrowly limited classes of speech, the prevention and punishment of which have never been thought to raise any Constitutional problem. These include the lewd and obscene, the profane, the libelous, and the insulting or "fighting" words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace.

In *Boss, supra,* the Nebraska Supreme Court considered a statute which stated that whoever " 'resists or abuses any sheriff, constable or any other officer' " would be guilty of a misdemeanor. The court, construing "abuse", stated:

The word abuse and similarly broad terms in like statutes have been held to pass constitutional muster under the First Amendment to the Constitution of the United States only if they are construed so as to apply the statute to punish

only what have been called "fighting words."

In making this statement the Nebraska court relied on *Chaplinsky, supra; Gooding, supra;* and *Lewis v. City of New Orleans,* 415 U.S. 130, 94 S.Ct. 970, 39 L.Ed.2d 214 (1974). We agree with the reasoning and the holding in the *Boss* case, and we hold that "abusing" speech in § 30–22–1(D), *supra,* covers only speech that can be called "fighting" words. Any other interpretation of § 30–22–1(D), *supra,* applied to speech renders it unconstitutional. *Lewis, supra.* When construing a statute we are to construe it, if possible, so that it will be constitutional. *State ex rel. Sedillo v. Sargent,* 24 N.M. 333, 171 P. 790 (1918).

## SUFFICIENCY OF THE EVIDENCE

Although the defendant did not raise this issue in his docketing statement we may review it. *State v. Doe,* 92 N.M. 100, 583 P.2d 464 (1978). In doing so, however, we must view the evidence in the light most favorable to the conviction. *State v. Lankford,* 92 N.M. 1, 582 P.2d 378 (1978). Viewed in this light, did the evidence support the defendant's conviction for "abusing" an officer?

"Fighting" words are those which tend to incite an immediate breach of the peace. *Chaplinsky, supra.* In *State v. Doe,* 92 N.M. 109, 583 P.2d 473 (Ct.App.) *rev'd on other grounds,* 92 N.M. 100, 583 P.2d 464 (1978), we considered whether a defendant was guilty of disorderly conduct under § 40A–20–1, N.M.S.A. 1953 (2d Repl.Vol. 6), which read:

> *Disorderly Conduct.*—Disorderly conduct consists of:
>
> A. engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace * * *.

The defendant in *Doe,* in a loud voice, continued to question the police about why the car had been stopped, and why he and his friends were always being harassed. This attracted attention. The defendant also clenched his fists, but there was no evidence that he made a move on the officer. On these facts we held that the defendant's conduct did not tend to disturb the peace and reversed his conviction. Judge Wood, writing for the court, quoted *Norwell v. Cincinnati,* 414 U.S. 14, 94 S.Ct. 187, 38 L.Ed.2d 170 (1973):

> [O]ne is not to be punished for nonprovocatively voicing his objection to what he obviously felt was a highly questionable detention by a police officer. Regardless of what the motivation may have been behind the expression in this case [the defendant's words], it is clear that there was no abusive language or fighting words. If there had been, we would have a different case.

In *City of Alamogordo v. Ohlrich,* 95 N.M. 725, 625 P.2d 1242 (Ct.App.1981) the defendant was convicted of disorderly conduct under § 6–2–8 of the Codified Ordinances of the City of Alamogordo, which read:

> DISORDERLY CONDUCT. Disorderly conduct consists of either:
>
> A. Engaging in violent, abusive, indecent, profane, boisterous, unreasonably loud or otherwise disorderly conduct which creates a clear and present danger of violence that tends to disturb the public peace; or
>
> \*     \*     \*     \*     \*     \*
>
> D. Using, in any public place, words which are inherently likely to provoke an immediate violent reaction in an average person to whom such words were addressed.

In *Ohlrich* the defendant shouted at a policeman: " 'You mother fucking son-of-a-bitch.' " We reversed his conviction holding that the evidence was insufficient to support the conviction.

*Doe, supra,* and *Ohlrich, supra,* deal with disorderly conduct statutes which prohibit speech that tends to disturb the peace. Since "fighting" words are those which tend to incite an immediate breach of the peace, *Chaplinsky, supra,* both *Doe* and *Ohlrich* give us guidance in the present case.

Comparing *Doe, supra,* and *Ohlrich, supra,* to the present case, we believe that,

like those cases, the evidence here does not support the conviction. The defendant was upset at what he thought was an unwelcomed intrusion into a family argument. He screamed obscenities, waved his arms, and yelled at the officers to "get the hell out of the house." Screaming obscenities and yelling "get the hell out of the house" do not amount to "fighting" words, particularly when they are addressed to police officers, who are supposed to exercise restraint. *Ohlrich, supra.* There is no evidence that the defendant threatened the officers, or that the officers felt threatened by him.

The defendant's conviction is reversed because the evidence does not support it. *State v. Losolla,* 84 N.M. 151, 500 P.2d 436 (Ct.App.1972).

IT IS SO ORDERED.

WALTERS, C.J., and WOOD, J., concur.