3 P.3d 142

2000-NMCA-047

**STATE of New Mexico, Plaintiff–Appellant,**

v.

**Jason JONES, Defendant–Appellee.**

**State of New Mexico, Plaintiff–Appellee,**

v.

**Joaquin Cordova, Defendant–Appellant.**

**Nos. 19,977, 20,372.**

Court of Appeals of New Mexico.

April 14, 2000.

Certiorari Denied, No. 26,314, May 25, 2000.

Patricia A. Madrid, Attorney General, Anita Carlson, Assistant Attorney General, Santa Fe, for Appellant.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Assistant Appellate Defender, Santa Fe, for Appellee.

Patricia A. Madrid, Attorney General, Arthur W. Pepin, Assistant Attorney General, Santa Fe, for Appellee.

Phyllis H. Subin, Chief Public Defender, Susan Roth, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

BOSSON, Judge.

{1} These appeals consider the felony offense of battery upon a peace officer. *See* NMSA 1978, § 30-22-24 (1971). This Court consolidated these cases on its own motion because they raise the common question of whether spitting, and in one case throwing urine, upon a peace officer is encompassed by this statute. To analyze this question we must determine the impact of the holding in *State v. Padilla*, 1997-NMSC-022, ¶ 2, 123 N.M. 216, 937 P.2d 492, on the statute and its corresponding uniform jury instruction. *See* UJI 14-2211 NMRA 2000. We determine that, depending upon context, a rational jury could find beyond a reasonable doubt that spitting or throwing urine upon a peace officer falls within the terms of the statute. We also hold that when the injury, threat to safety, or challenge to authority of a peace officer is in dispute, then upon request the jury must be instructed that the battery resulted in an "actual injury, actual threat to safety, or meaningful challenge to authority." *Padilla*, 1997-NMSC-022, ¶ 7, 123 N.M. 216, 937 P.2d 492. For the reasons that follow, we reverse both cases and remand for further proceedings.

**BACKGROUND**

**JASON JONES**

{2} Jason Jones yelled from his parked car at a cruising police officer. When the officer began to stop his car, Jones drove off, and for some time Jones refused to pull over. When he finally did, the officer arrested and handcuffed Jones for driving under the influence of liquor and placed him in the rear of a patrol car. During the trip to the police station, Jones' conduct vacillated between periods of calm followed by outbursts of anger. In one irate moment, Jones told the officer, "I'm going to pull something out of me and put it on you to kill all of your daughters." Then Jones leaned forward and spat on the officer, which caused phlegm to land on the side of the officer's face and shoulder.

{3} The parties stipulated to these facts and asked the trial court to determine whether they supported a conviction as a matter of law under the battery upon a peace officer jury instruction, as amended to conform with *Padilla*, 1997-NMSC-022, 123 N.M. 216, 937 P.2d 492. The trial court found that these facts did not satisfy the elements of the crime under UJI 14-2211, and dismissed the charge against Jones. The State appeals the dismissal, requesting that the case be remanded and the indictment reinstated.

**JOAQUIN CORDOVA**

{4} Joaquin Cordova violated detention center rules of the Roosevelt County Jail by attending breakfast while nude and then flooding the day room. For this behavior, Cordova was placed in solitary confinement. After a few days without a shower or the ability to flush his toilet, Cordova became agitated. One evening during a welfare check, when the corrections officer checked on the prisoner through the food tray slot in the cell door, Cordova spat on the officer. The officer quit performing the remaining welfare checks on Cordova's cell for the duration of his shift for fear of being spit on again.

{5} The next morning another corrections officer served breakfast to Cordova. This officer heard Cordova scream and curse at him. As the officer left Cordova's cell, he heard a crash and returned to find Cordova's food tray splattered across the floor. When the officer began to clean up the mess, Cordova screamed that he had "something else" for the officer, and threw liquid on him contained in a "little white cup, like a meds cup." Cordova screamed that the liquid was urine. Thereafter, the officers subdued Cordova with pepper spray and placed him in hand and leg restraints. A jury convicted Cordova of two counts of battery upon a peace officer. Cordova appeals, arguing that the trial court erred in refusing to give his requested jury

instruction, which would have tracked the language of *Padilla*, 1997–NMSC–022, ¶ 7, 123 N.M. 216, 937 P.2d 492.

## DISCUSSION

■ {6}   Battery upon a peace officer is "the unlawful, intentional touching or application of force to the person of a peace officer while he is in the lawful discharge of his duties, when done in a rude, insolent or angry manner." Section 30–22–24(A). The purpose of the battery upon a peace officer statute "is to protect the safety and authority of peace officers." *Padilla*, 1997–NMSC–022, ¶ 5, 123 N.M. 216, 937 P.2d 492 (emphasis omitted). *Padilla* found that the statute's felony sanctions were aimed at behavior that was above and beyond the "mere affronts to personal dignity" that are actionable under tort law. *Id.* ¶ 6. Therefore, it was inappropriate to graft the analysis of tort law onto this section of the criminal code. *Padilla* observed that the penalty for battery upon a peace officer, a fourth degree felony, was the same as that for an aggravated battery upon a peace officer, which requires "painful temporary disfigurement or temporary loss or impairment of the functions of any member or organ of the body." NMSA 1978, § 30–22–25(B) (1971). Both are punishable by eighteen months imprisonment. In balancing the conduct and penalties involved, the Court reasoned that only if the unlawful conduct comprising a battery upon a peace officer rises to the level of an "actual injury, actual threat to safety, or meaningful challenge to authority," could any logic be discerned from the punishment that accompanies the statute. *Padilla*, 1997–NMSC–022, ¶ 7, 123 N.M. 216, 937 P.2d 492. Otherwise, even a mundane civil battery, such as rudely grabbing a ticket from an officer's hands, or any other touching no matter how insignificant, could, at the prosecutor's whim, become punishable as a felony. The Supreme Court sought to avoid such an absurd result. *See id.* ¶ 6; *see also State v. Ortega*, 113 N.M. 437, 439, 827 P.2d 152, 154 (Ct.App.1992).

{7}   Thereafter, the uniform jury instruction (UJI) for battery upon a peace officer was amended, ostensibly to conform with the holding of *Padilla*. *See* UJI 14–2211. Although Use Note 3 to the UJI acknowledges that *Padilla* defined unlawful conduct as that which "meaningfully challenges" an officer's authority, the text of the instruction omits the term "meaningfully." *Id.* Nor does the UJI use the word "actual" when describing the threat to an officer's safety. These terms were fundamental to the definition of unlawfulness in *Padilla*, and their absence from the amended UJI is inexplicable.

{8}   Because this Court is vested with the responsibility to review a UJI in the absence of controlling Supreme Court precedent, we must decide whether the amended UJI sufficiently states the law as applied to the facts of these particular prosecutions. *See State v. Wilson*, 116 N.M. 793, 795, 867 P.2d 1175, 1177 (1994) (holding that the "Court of Appeals is *not* precluded from considering error in jury instructions"). Thus, the question before us is twofold. First, must the jury instruction include the terms, "meaningful challenge," "actual threat," or "actual injury," if so requested? Second, can spitting on an officer constitute battery upon a peace officer, assuming a jury is properly instructed according to the evidence? We answer both questions in the affirmative.

### The Jury Instruction for Section 30–22–24 after *Padilla*

■ {9}   In response to the first question, we think that *Padilla* requires the jury instruction to reflect the State's burden of proof, which includes an "actual injury, actual threat to safety, or meaningful challenge to authority," when the issue of a challenge to authority or threat to safety is in dispute and the defendant requests such language in the instruction. *See Padilla*, 1997–NMSC–022, ¶ 7, 123 N.M. 216, 937 P.2d 492. The Supreme Court's goal in *Padilla*—to separate felonious conduct from lesser offenses—would be undermined if these terms are not included in an instruction to the jury. Without language that focuses upon the context of the act and the nature of the injury, the jury is not instructed, as it must be under *Padilla*, to distinguish mere rude, insolent, or angry conduct that could be punished as a misdemeanor, from truly felonious conduct that poses a threat or a challenge that is

proportional in consequence to the punishment extracted.

{10} Language focusing on context may be critical because, as *Padilla* demonstrated, a contextual analysis is necessary to determine what constitutes a meaningful challenge to authority or an actual threat to safety. Although the behavior in that case involved squirting baby oil on corrections officers as they subdued an inmate, the opinion noted that the atmosphere inside the jail, the context of the battery, had already become unruly to the point of rebellion. *See id.* ¶ 8. Under these circumstances, the Court held that "a jury could find beyond a reasonable doubt that [the defendant's] acts exacerbated a serious situation in the jail and created unnecessary danger for or jeopardized the authority of the detention officers." *Id.* Thus, the jury must be directed to look to the surrounding circumstances to determine whether a battery is merely offensive in the ordinary civil sense, or whether it rises to the level of "unnecessary danger" envisioned by the definition of unlawfulness in *Padilla*, 1997–NMSC–022, ¶ 8, 123 N.M. 216, 937 P.2d 492.

{11} By restricting the class of conduct punishable as a felony, *Padilla* reflects the accepted legal principle that police are trained to tolerate more than the average citizen is expected to endure. *See City of Alamogordo v. Ohlrich*, 95 N.M. 725, 726, 625 P.2d 1242, 1243 (Ct.App.1981). A useful analogy can be drawn to the use of "fighting words," which are not protected as speech under the First Amendment to the United States Constitution. *See Chaplinsky v. New Hampshire*, 315 U.S. 568, 573, 62 S.Ct. 766, 86 L.Ed. 1031 (1942). Fighting words are not protected because their utterance would cause an average person to react violently. *See State v. James M.*, 111 N.M. 473, 476, 806 P.2d 1063, 1066 (Ct.App.1990). In New Mexico, the use of fighting words is punishable when directed towards a fellow citizen. *See id.* at 475, 806 P.2d at 1065 (yelling obscenities at another citizen was likely to incite a breach of the peace). However, if similar language is directed towards the police, we expect greater restraint and self-control. *See Ohlrich*, 95 N.M. at 726, 625

P.2d at 1244 (dismissing disorderly conduct conviction of defendant who yelled obscenities at police officer). Our legislature has not made the use of profanity towards peace officers a crime, much less a felony, although some would argue that condoning this behavior is to "foster disrespect for law and order." *Id.* at 727, 625 P.2d at 1244 (Hernandez, J., dissenting). We recently declined an invitation to lower our expectations of police officers, reiterating that they are " 'expected to have a higher tolerance for offensive conduct.' " *State v. Hawkins*, 1999–NMCA–126, ¶ 11, 128 N.M. 245, 991 P.2d 989 (quoting *James M.*, 111 N.M. at 477, 806 P.2d at 1067). We presume the legislature is aware that police are held to a higher standard when it comes to defining unlawful conduct punishable as a felony. *See State v. Cleve*, 1999–NMSC–017, ¶ 14, 127 N.M. 240, 980 P.2d 23; *Padilla*, 1997–NMSC–022, ¶ 6, 123 N.M. 216, 937 P.2d 492. And we believe our Supreme Court's construction of Section 30–22–24, as expressed in *Padilla*, reflects this "higher tolerance" expected of police officers with respect to minor, technical batteries. *Cf. Padilla*, 1997–NMSC–022, ¶ 6, 123 N.M. 216, 937 P.2d 492 ("It is absurd to think the legislature intended to make felonious mere affronts to personal dignity.").

{12} We observe that even if some offensive conduct, like spitting, does not always rise to the level of a felony, it may still be punishable by one means or another. For example, under any circumstance, intentionally spitting upon a peace officer is abusive, and therefore, if supported by the evidence, it might be punishable as resisting, evading, or obstructing an officer. *See* NMSA 1978, § 30–22–1(D) (1981) (making "resisting or abusing any … peace officer in the lawful discharge of his duties" a misdemeanor). Additionally, as the Supreme Court pointed out in *Padilla*, a jailer or corrections officer could invoke a host of institutional sanctions to punish such behavior. *Padilla*, 1997–NMSC–022, ¶ 10, 123 N.M. 216, 937 P.2d 492. For these reasons, we take our Supreme Court at its word. When the element of unlawfulness is in dispute and the facts of the case are open to interpretation, the trial court must indulge a request for an instruction that the charged conduct rise to the level

of an "actual injury, actual threat to safety, or meaningful challenge to authority" before a jury can convict of a felony. *Id.* ¶ 7.

{13} Our holding today is in line with the majority rule that imposes penal sanctions only for those batteries resulting in actual physical injury. *See* 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law* § 7.15(a) (1986). Although the State urges us to adopt the minority approach that upholds spitting upon a peace officer as a felony, with or without actual injury, our statute does not reflect any such legislative intent. Unlike the few jurisdictions that apply the minority rule, the language of our battery upon a peace officer statute does not cover acts intending to "injure, insult or provoke," Ariz.Rev.Stat. §§ 13–1203, –04(5) (1989 & Cum.Supp.1999), or proscribe applications of force designed to "embarrass" the victim. *See People v. Terry*, 217 Mich.App. 660, 553 N.W.2d 23, 24–25 (1996) (per curiam) (applying Michigan jury instruction containing foregoing language to affirm conviction for assault of prison guard intended to embarrass). New Mexico's statute demands more.

■ {14} While the parties urge us to define the legal boundaries of a "meaningful challenge" to authority, we decline to do so. Because its definition demands knowledge of the context in which the battery arose, this question is best left to juries to decide using their collective common sense and wisdom as a guide. *See State v. Trevino*, 116 N.M. 528, 531, 865 P.2d 1172, 1175 (1993) (holding that the common sense of the jury " 'is sufficient to apply the [contributing to the delinquency of a minor] statute to each particular case, and point out what particular conduct is rendered criminal by it' " (quoting *State v. McKinley*, 53 N.M. 106, 111, 202 P.2d 964, 967 (1949))). The term "meaningful" provides a means to prevent treating petty conduct that could be interpreted as an incidental challenge to authority as though it were a strict liability felony.

### Does Spitting upon a Peace Officer Violate Section 30–22–24?

■ {15} We turn now to the second question of whether spitting could constitute a battery upon a peace officer, assuming a proper instruction. We emphasize that the answer depends upon the context in which the battery takes place. In Jones' case, for instance, depending upon the evidence actually presented, a rational, properly instructed jury could find beyond a reasonable doubt that his spitting upon an officer from the rear seat of the officer's car constituted a "meaningful challenge" to the authority the officer was lawfully exercising over him pursuant to his arrest for DWI. Although it is unclear from the record, it also appears that the battery occurred while the officer was driving his vehicle. If so, the spitting could pose an actual threat to safety if it affected the officer's ability to operate the vehicle. Because spitting on an officer could fall within the statute under either prong (safety or authority), we reverse the order of dismissal and reinstate Count I of Jones' indictment.

■ {16} Cordova's case also requires reversal but for different reasons. The jury was not instructed in the language of *Padilla*, nor was counsel able to argue that the challenge to authority had to be meaningful, despite the presence of evidence supporting this claim. After the presentation of the evidence at trial, Cordova tendered a jury instruction for each count of battery upon a peace officer that included the word "meaningfully." Counsel pointed out that the UJI's Use Note quoted the holding from *Padilla*. Cordova argued that *Padilla* called for a higher standard than reflected in the UJI, and insisted that "meaningfully" was a key word which imposed a burden upon the State to prove more than just a mere, incidental challenge to authority. The trial court refused the instruction.

{17} The error went beyond a refusal to instruct. During closing argument, Cordova began to argue that in order to convict, the jury must find that any challenge to the officer's authority was meaningful. This comment drew an immediate objection. The State argued that Cordova was attempting to redefine the law given to the jury. Cordova stated that he was only arguing New Mexico Supreme Court precedent. The trial judge told counsel that his "argument is with the Supreme Court, and not with this jury," and

sustained the objection. In effect, these rulings limited the State's burden to proving only that Cordova had committed a mere unwanted touching; that is, the rulings ignored the Supreme Court's holding in *Padilla*. Because the evidence here called into question the challenge to an officer's authority or whether the safety of an officer was actually threatened, the requested instruction should have been given in the terms of a "meaningful challenge to authority," on an "actual threat to safety," and defense counsel should have been allowed to argue the point to the jury. *Padilla*, 1997–NMSC–022, ¶¶ 2, 7, 11, 123 N.M. 216, 937 P.2d 492. Thus, we reverse and remand for a new trial.

{18} Similar to the case against Jason Jones, we believe that Cordova's act of spitting upon jailers or throwing urine at them could constitute a "meaningful challenge" to their authority, depending upon the context and assuming a properly instructed jury. Whereas we find that there was sufficient evidence upon which to base a conviction, we do not find that the evidence was so overwhelming against Cordova as to make this error harmless. *See Sanchez v. State*, 103 N.M. 25, 27, 702 P.2d 345, 347 (1985).

{19} We add one further observation regarding the sufficiency of the evidence in each case to amount to an "actual threat to the safety" of the officer. We acknowledge that spitting or throwing bodily waste may give rise to rational concerns about infection or communicable disease. The jailers in the Cordova prosecution argued as much. Defendant Jones threatened as much as he spat upon the officer. However, we have not been cited to any authority, and we know of none, that based criminal liability for battery upon the victims' subjective and unsubstantiated fears that they could develop a disease. *Cf. Brock v. State*, 555 So.2d 285, 287–88 (Ala.Crim.App.1989) (reversing first degree assault conviction when no evidence about HIV transmission was presented and "the role of saliva in the transmission of [HIV] is unclear" (citation and internal quotation marks omitted)). *But see State v. Bird*, 81 Ohio St.3d 582, 692 N.E.2d 1013, 1016 (1998) (affirming no contest plea of HIV-infected defendant who spat in police officer's face because plea made it unnecessary to decide whether HIV could be transmitted by saliva). To the contrary, the authorities all involve batteries with bodily waste from known carriers of communicable disease. *See, e.g., Weeks v. State*, 834 S.W.2d 559, 562–65 (Tx. Ct.App.1992) (sustaining attempted murder conviction of HIV-infected inmate who spat into face of guard); *Commonwealth v. Brown*, 413 Pa.Super. 421, 605 A.2d 429 430–31 (1992) (sustaining aggravated assault conviction against inmate with HIV and hepatitis who flung fecal material into guard's mouth). Neither case before us contains evidence that the accused carried any communicable disease. We will not assume as a matter of law that one has been battered by a harmful disease unless supported by the evidence, especially in the absence of clear legislative intent to make such unsubstantiated apprehension a felony.

## CONCLUSION

{20} We hold that a reasonable jury could find that spitting or throwing urine upon a peace officer comes within the purview of battery upon a peace officer. However, when there is evidence to support a defendant's position that his challenge to an officer's authority was not meaningful, nor actually threatened an officer's safety, and the defendant so requests, then the jury must be instructed, using those terms taken from the Supreme Court's opinion in *Padilla*. Therefore, we reinstate Jones' indictment and reverse Cordova's conviction, and we remand for a new trial for Cordova with a jury instruction that conforms with this opinion.

{21} **IT IS SO ORDERED.**

BUSTAMANTE and ARMIJO, JJ., concur.