This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

### IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-36660**

**CITY OF LAS CRUCES,**

Plaintiff-Appellee,

v.

**OSBALDO FLORES,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Marci E. Beyer, District Judge**

Robert A. Cabello, Assistant City Attorney Sr.
Las Cruces, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Caitlin C.M. Smith, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**B. ZAMORA, Judge.**

**{1}** Defendant appeals from his convictions, following a de novo bench trial in the district court, of two counts of resisting, evading, or obstructing an officer, contrary to Las Cruces Municipal Code of Ordinances (LCMC), Las Cruces, N.M., Code of Ordinances, art. V, § 19-296(a)(2) (1988), and one count of concealing identity, contrary to Las Cruces, N.M., Code of Ordinances, art. I, § 19-4 (1988). Defendant argues that the evidence was insufficient to support his convictions because the arresting officers were without legal authority to detain him for questioning or to require him to produce identification. We reverse.

**BACKGROUND**

**{2}** Defendant was charged under the LCMC for the offenses of evading an officer[1] and concealing identity. The evidence presented below is undisputed. The trial testimony established that two officers were in Defendant's neighborhood investigating a report of a stolen car. Defendant, apparently believing the officers were attempting to catch and ticket traffic violators just to generate revenue, recorded the officers on his cell phone and yelled that they were wasting taxpayer dollars and should go collect revenue elsewhere. At some point, Defendant's neighbor came outside and spoke with one officer while the other officer remained with Defendant. The neighbor stated that he came outside because he heard his dogs barking, not due to Defendant's yelling. The neighbor testified that he saw Defendant holding up his cell phone like he was recording the officers and verbally criticizing the police about his belief that police waste taxpayer money. The neighbor told the officer that Defendant was not bothering him but said that Defendant was "always yelling." He further testified that Defendant was talking in a "high tone of voice" and in an excited, but not agitated, manner. There were no complaints from other neighbors.

**{3}** Following his conversation with the neighbor, the officer approached Defendant, who was standing with another officer, and asked him for identification. Defendant turned his phone toward the approaching officer, held up his other hand in a gesture to stop and told the officer "step back." As the officer continued to approach, Defendant said "stay away from me." The officer told Defendant "if you keep yelling and you keep screaming, and you keep causing people to come outside, you will be arrested for disorderly conduct." The officers repeatedly demanded Defendant provide his identification. Defendant responded, "I don't need to identify myself to you, because I have not committed [a] crime." One of the officers replied, "The crime is disorderly conduct." According to the officers, Defendant was obstreperous with them, denied their repeated request to produce identification, and ultimately started to walk away into his yard. The officers ran after Defendant and once in Defendant's yard, pushed Defendant to his knees, tased him, and pepper sprayed his face. Defendant was handcuffed and arrested. Following a bench trial, Defendant was convicted of two counts of resisting, evading or obstructing an officer and one count of concealing identity. Defendant now appeals.

**DISCUSSION**

**{4}** Defendant argues the evidence was insufficient to support his convictions because the officers lacked reasonable suspicion to detain him and require him to produce identification. Defendant also contends the district court abused its discretion in denying him a continuance and that his two convictions for evading an officer constitute

---

[1]The crime of resisting, evading or obstructing an officer as set forth in Las Cruces, N.M., Code of Ordinances, art. V, § 19-296 contains several alternative means by which the offense may be committed. Defendant was charged under only Las Cruces, N.M., Code of Ordinances, art. I, § 19-296(a)(2) for conduct alleged to have constituted fleeing or evading.

double jeopardy. We agree there was insufficient evidence to convict Defendant of the charges and, therefore, do not address Defendant's remaining contentions of error.[2]

**Sufficiency of the Evidence to Support Defendant's Convictions**

**{5}** Defendant argues that reasonable suspicion is an element of the charges against him and, therefore, our analysis of the sufficiency of the evidence must entail whether the officers had reasonable suspicion to detain him. As a preliminary matter, the City of Las Cruces (City) contends that Defendant's argument was not preserved. We disagree. Whether sufficient evidence exists to support a conviction may be raised for the first time on appeal. *See State v. Stein*, 1999-NMCA-065, ¶ 9, 127 N.M. 362. 981 P.2d 295 (concluding sufficiency of the evidence to meet the elements of an offense may be raised for the first time on appeal). Moreover, defense counsel argued below that the officers did not have reasonable suspicion to investigate Defendant's disorderly conduct and invoked a ruling from the district court. Thus, Defendant's argument was properly preserved.

**{6}** Whether evidence is sufficient to support a verdict requires an inquiry into whether direct or circumstantial evidence exists "to support a verdict of guilt beyond a reasonable doubt with respect to every element essential to a conviction." *State v. Sutphin*, 1988-NMSC-031, ¶ 21, 107 N.M. 126, 753 P.2d 1314. The reviewing court "view[s] the evidence in the light most favorable to the guilty verdict, indulging all reasonable inferences and resolving all conflicts in the evidence in favor of the verdict." *State v. Cunningham*, 2000-NMSC-009, ¶ 26, 128 N.M. 711, 998 P.2d 176. To justify a conviction, the evidence in the record must affirmatively establish every essential element of an offense charged. *State v. Losolla*, 1972-NMCA-085, ¶ 4, 84 N.M. 151, 500 P.2d 436. As we explain below, reasonable suspicion is an element of each of the charges against Defendant and therefore, we consider whether this element was met in analyzing the sufficiency of the evidence.

**A.      Reasonable Suspicion as an Element of the Charges**

**{7}** The elements of the LCMC charges for evading an officer and concealing identity are identical to their state law counterparts, differing only in penalty. *Compare* Las Cruces, N.M., Code of Ordinances, art. V, § 19-296(a)(2) (defining evading an officer as "[i]ntentionally fleeing, attempting to evade or evading an officer of this state when the person committing the act of fleeing, attempting to evade or evasion has knowledge that the officer is attempting to apprehend or arrest him") *with* NMSA 1978, Section 30-22-1(B) (1981) (establishing identical elements) and Las Cruces, N.M., Code of Ordinances, art. I, § 19-4 (defining concealing identity as "concealing one's true name

---

[2]Defendant argued that he was engaged in conduct protected by the First Amendment and had broken no laws when officers detained him and demanded he produce identification. Because we conclude that the officers were without reasonable suspicion to detain Defendant, we need not address Defendant's argument that his conduct was protected by the First Amendment. *See Schlieter v. Carlos*, 1989-NMSC-037, ¶ 13, 108 N.M. 507, 775 P.2d 709 ("It is an enduring principle of constitutional jurisprudence that courts will avoid deciding constitutional questions unless required to do so.").

or identity, or disguising oneself with the intent to obstruct the due execution of the law or with intent to intimidate, hinder or interrupt any public officer or any other person in a legal performance of his duty or the exercise of his rights under the laws of the United States or of this state.") *with* NMSA 1978, § 30-22-3 (1963) (establishing identical elements). As such, we apply our established jurisprudence to determine whether the City was required to prove that the officers had reasonable suspicion to detain Defendant as an element of both charges.

**{8}** Like its state statute counterpart, one of the essential elements of the LCMC crime for evading an officer is that "the person committing the act of . . . evasion has knowledge that the officer is attempting to apprehend or arrest him[.]"Las Cruces, N.M., Code of Ordinances, art. V, § 19-296(a)(2). Our Supreme Court in *State v. Gutierrez*, stated that the definition of "apprehend" in Section 30-22-1(B) means a "seizure[] in the name of the law" and equated such an apprehension "to include a situation in which an officer is attempting to briefly detain a person for questioning based on reasonable suspicion." 2007-NMSC-033, ¶ 30, 142 N.M. 1, 162 P.3d 156 (internal quotation marks and citation omitted). Hence, our Supreme Court concluded that the presence of reasonable suspicion is crucial to a determination of sufficiency of the evidence for evading and eluding an officer because if the detaining officer lacked reasonable suspicion then he also lacked the legal authority to detain the defendant.[3] *Id.* ¶ 32.Further, like the state statute, one of the elements of concealing identity pursuant to Las Cruces, N.M., Code of Ordinances, art. I, Section 19-4 requires proof that the officer is acting "in a legal performance of his duty." *See* Las Cruces, N.M., Code of Ordinances, art. I, § 19-4; Section 30-22-3. In *Ortiz*, this Court recognized well-established law that "[a]n officer detaining a suspect for the purpose of requiring him to identify himself, has conducted a seizure subject to the requirements of the Fourth Amendment." 2017-NMCA-006, ¶ 12. Reasonable suspicion is required for such a seizure. *See id.*; *State v. Dawson*, 1999-NMCA-072, ¶ 21, 127 N.M. 472, 983 P.2d 421 (concluding that unless there is reasonable suspicion to believe the defendant was involved in criminal activity, it violates the Fourth Amendment to require the defendant to produce identification). Consequently, we held that absent reasonable suspicion to detain, the seizure of the defendant was unlawful, and the prosecution failed to prove that the officer was in the legal performance of her duty. *See Ortiz*, 2017-NMCA-006, ¶ 12. Accordingly, to assess the sufficiency of the evidence for the crimes of evading an officer and concealing identity, we must address whether the evidence at trial established the existence of reasonable suspicion, giving the officers legal authority to detain Defendant

**B. The Officers' Lacked Reasonable Suspicion to Detain Defendant**

---

3We note that the City relies on the right to resist an unlawful arrest on appeal. Defendant here, however, was charged only pursuant to Las Cruces, N.M., Code of Ordinances, art. V, § 19-296(a)(2) for conduct alleged to have constituted fleeing or evading, rather than conduct alleged to have constituted resisting. The reasonable suspicion analysis for evading is different from the analysis undertaken when a defendant is charged with resisting arrest through the use of force. *See, e.g., State v. Doe*, 1978-NMSC-072, ¶ 14, 92 N.M. 100, 583 P.2d 464 ("An arrest undertaken without probable cause does not vitiate all the authority of the arresting officer.").

**{9}** "Reasonable suspicion exists where an officer can point to specific articulable facts, together with rational inferences from those facts that, when judged objectively, would lead a reasonable person to believe criminal activity occurred or was occurring." *Id.* ¶ 13 (internal quotation marks and citation omitted). Although reasonable suspicion may be supported by "wholly lawful conduct, it may not be based on unsupported intuition and inarticulate hunches." *Id.* (alteration, internal quotation marks, and citation omitted). It is necessary to review the degree of suspicion that attaches to particular conduct and not whether the conduct itself is "innocent" or "guilty" to analyze the existence of reasonable suspicion. *Id.*

**{10}** The district court—apparently without regard to the neighbor's testimony—concluded that the officers had reasonable suspicion to investigate disorderly conduct based on the fact that Defendant loudly criticized police. Disorderly conduct consists of: "[e]ngaging in violent, abusive, profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the peace[.]" Las Cruces, N.M., Code of Ordinances, art. III, § 19-87(a)(1) (1988); *see also* NMSA 1978, Section 30-20-1(A) (1967) (establishing same elements). Conduct is not criminal, or suspicious, simply because it is boisterous or unreasonably loud; the conduct must also tend to disturb the peace*. See State v. Salas*, 1999-NMCA-099, ¶ 12, 127 N.M. 686, 986 P.2d 482 (determining that the offense of disorderly conduct "has two elements: the conduct itself and the tendency of the conduct to disturb the peace"). This is particularly true when the conduct at issue is comprised of words alone. New Mexico courts have criminalized only limited classes of speech: "the lewd and obscene, the profane, the libelous, and the insulting or 'fighting' words—those which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *State v. James M.*, 1990-NMCA-135, ¶ 11, 111 N.M. 473, 806 P.2d 1063 (internal quotation marks and citation omitted). The public's sensibilities are tough enough that, typically, the act of yelling alone does not shatter public order or threaten to do so. *See, e.g., State v. Hawkins*, 1999-NMCA-126, ¶ 13, 128 N.M. 245, 991 P.2d 989 ("The mere fact that people may have heard [the d]efendant's remarks, however loud or offensive they may have been, is insufficient to support a charge of disorderly conduct."). Although the Legislature has not specifically defined "conduct that tends to disturb the peace," our Supreme Court has implicitly defined it as "a disturbance of public order by an act of violence, or by an act likely to produce violence, or which, by causing consternation and alarm, disturbs the peace and quiet of the community." *State v. Florstedt*, 1966-NMSC-208, ¶ 7, 77 N.M. 47, 419 P.2d 248 (internal quotation marks and citation omitted). Our Supreme Court has instructed that we construe the disorderly conduct statute narrowly, and "unless the acts [that are alleged] fall clearly within the statute, they are not disorderly. *State v. Correa*, 2009-NMSC-051, ¶ 22, 147 N.M. 291, 222 P.3d 1 (alteration, internal quotation marks, and citation omitted).

**{11}** In its ruling that Defendant's conduct toward the officers provided reasonable suspicion to investigate disorderly conduct, the district court explained:

> [Y]ou're not allowed to be so boisterous and so loud to police officers, and accusing, and threatening—I think that was the disorderly conduct. When

police officers approach us and want to investigate something, it's "yes" or "no, sir", or somebody can end up dead. . . . When a police officer approaches you and asks you for ID, you give it to them. That's the way that goes. Now if you're just standing on the street, I guess, you know and doing absolutely nothing, which is not your situation, I suppose you *legally* have a right not to give your ID, but then you probably are making a judgment call that you need to let a judge make.

Contrary to the district court's reasoning, our Supreme Court and this Court have applied the rule that in most instances "arguing with a police officer, even when using profane and insulting words, will not be enough to constitute disorderly conduct, unless the words are coupled with threatening behavior." *Correa*, 2009-NMSC-051, ¶ 26 (internal quotation marks and citation omitted); *see Salas*, 1999-NMCA-099, ¶ 20 (affirming a conviction for disorderly conduct where the defendant's profane language was accompanied by the defendant approaching law enforcement with clenched fists); *Hawkins*, 1999-NMCA-126, ¶¶ 19-20 (distinguishing *Salas* and reversing the defendant's disorderly conduct conviction where the defendant solely argued with law enforcement and did not verbalize threats or exhibit any threatening behaviors). Merely yelling obscenities at an officer, without more, does not create reasonable suspicion to investigate or probable cause to arrest for disorderly conduct.[4] *See City of Alamogordo v. Ohlrich*, 1981-NMCA-028, ¶ 5, 95 N.M. 725, 625 P.2d 1242 (holding that the defendant who yelled profanity at an officer did not violate city ordinance prohibiting disorderly conduct); *see also State v. Wade,* 1983-NMCA-084, ¶ 17, 100 N.M. 152, 667 P.2d 459 (screaming obscenities and yelling "get the hell out of the house" do not constitute fighting words, particularly when addressed to police officers who are expected to exercise restraint).

**{12}** "Police officers, by nature of their training, are generally expected to have a higher tolerance for offensive conduct and language." *James M.*, 1990-NMCA-135, ¶ 17. As our Supreme Court pointed out in *Correa*: "We are not indifferent to the officers in the case." 2009-NMSC-051, ¶ 30. These officers play an invaluable role in serving and protecting our community, and unfortunately, they are often subjected, as they were here, to ill-advised behavior. "However, it is because of their degree of skill, training, and experience that we rely on officers," not only to complete their duties, but "not to react to verbal provocation, at the risk of escalating a situation rife with conflict." *Id.* Without evidence of anything more than Defendant's loud remarks and cell phone recording of the officers, all of which occurred in their presence, the testimony did not give rise to an objectively reasonable suspicion that Defendant had committed or was committing the crime of disorderly conduct. *Id.* ("[W]ithout evidence of anything more than profane and vulgar remarks, the evidence is insufficient to support [the d]efendant's [disorderly conduct] conviction based on what he said to the officers."); *see Hawkins*, 1999-NMCA-126, ¶ 13 ("New Mexico is among the states that holds police

___

4Although the district judge implied that Defendant's conduct was accusing and threatening, our review of the record and lapel tape is devoid of evidence that Defendant by word or action made any threats to the officers and neither party has asserted on appeal that Defendant's criticisms of the officers were threatening.

officers to a higher standard of tolerance for abuse or offensive language. In fact, New Mexico decided this issue years ago[.]" (citation omitted)).

**{13}** We next address the City's argument that, even in the absence of reasonable suspicion to investigate disorderly conduct, Defendant's repeated refusal to produce identification or, following this refusal, to respond to officer commands not to walk away justified Defendant's detention and arrest. While the City is correct that officers "do not need justification to approach a person and ask that person questions," this is true only so long as the person remains free to leave and is not required to answer their questions. *State v. Jason L.*, 2000-NMSC-018, ¶ 14, 129 N.M. 119, 2 P.3d 856 ("The police do not need any justification to approach a person and ask that individual questions; however, the officer may not convey a message that compliance with their requests is required." (internal quotation marks and citation omitted)). "[A] person has the constitutional right to walk away from an officer who lacks reasonable suspicion and simply wants to question the person[.]" *Gutierrez,* 2007-NMSC-033, ¶ 31. A defendant who flees a seizure that is unsupported by reasonable suspicion cannot be punished for exercising his right to end the encounter and walk away. *See id.* ¶ 35.

**{14}** In sum, the officers did not have reasonable suspicion to detain Defendant and demand his identification, *see id.* ¶ 32 (explaining that when an officer approaches a person without reasonable suspicion, "the person approached need not answer any question put to him; indeed, he may decline to listen to the questions at all and may go on his way" (omission, alteration, internal quotation marks, and citation omitted)). Absent reasonable suspicion, there was no basis for the seizure of Defendant. *See Ortiz,* 2017-NMCA-006, ¶ 13; *Dawson,* 1999-NMCA-072, ¶ 21.

**{15}** Lastly, to the extent the City argues that it was reasonable for the officers to detain defendant to investigate his yelling and whether he was disturbing the tranquility of the community, we disagree. *See Florstedt,* 1966-NMSC-208, ¶ 7. The evidence does not support a conclusion that it was reasonable for the officers to investigate Defendant's conduct as tending to cause "consternation and alarm." *See id.* (holding that conduct which tends to disturb the peace must be an act of or likely to produce violence or "which, by causing consternation and alarm, disturbs the peace and quiet of the community" (internal quotation marks and citation omitted)). Our review of the record does not reveal, nor does the City point to, any threatening behavior or violent conduct accompanying Defendant's verbal criticisms and cell phone recording of the officers. Additionally, the record does not reflect that Defendant's behavior toward the officers tended to have any effect on others at all, let alone that it rose to the level of tending to cause "alarm" amongst his neighbors. While the testimony established that a neighbor came out of his home during the encounter between officers and Defendant, Defendant was not the reason that the neighbor came outside. The officers' testimony did not articulate any objective facts which would establish that Defendant's conduct tended to disturb the peace. Indeed, the record is void of any evidence that Defendant's yelling and cell-phone recording annoyed or bothered anyone other than the officers. *See, e.g., Hawkins,* 1999-NMCA-126, ¶ 13 (holding that there must be evidence that those who heard a defendant's remarks were negatively affected by or reacted to the

statements in order to show that remarks were likely to incite listeners to breach the peace because "[t]o hold otherwise would be to allow police routinely to add disorderly conduct charges to any underlying charges because it is not uncommon for those being arrested to become belligerent and for crowds to gather at the sight of an arrest"). Without more, Defendant's loud criticism of the police and his act of recording them on his cell phone were not enough to provide an objectively reasonable suspicion to investigate Defendant for disturbing the tranquility of the community.

**{16}** Absent reasonable suspicion establishing the officers' legal authority to detain Defendant, there was insufficient evidence to support Defendant's convictions for evading arrest and concealing identity. Accordingly, we do not address the remaining elements of the charges.

**CONCLUSION**

**{17}** The evidence presented at trial was insufficient to support Defendant's convictions and therefore, we reverse Defendant's convictions, remand for entry of an amended order vacating his convictions with prejudice, and do not permit retrial in this case. *See State v. Roper*, 2001-NMCA-093, ¶ 23, 131 N.M. 189, 34 P.3d 133 ("If there was insufficient evidence to support the [charge] for which [the d]efendant was convicted and sentenced, the remedy would be a discharge, not a new trial."); *Gutierrez*, 2007-NMSC-033, ¶ 25 (stating that if there was insufficient evidence to support a conviction, the double jeopardy clause bars retrial).

**{18}   IT IS SO ORDERED.**

**BRIANA H. ZAMORA, Judge**

**WE CONCUR:**

**LINDA M. VANZI, Judge**

**JACQUELINE R. MEDINA, Judge**